# EXHIBIT A

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Schilliano, LLC d/b/a ILLIANO'S RISTORANTE & PIZZERIA, on behalf of itself and others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CAVENDISH FARMS LTD.; CAVENDISH FARMS, INC.; CIRCANA, LLC; J.R. SIMPLOT COMPANY; LAMB WESTON HOLDINGS, INC.; LAMB WESTON, INC.; LAMB WESTON BSW, LLC; LAMB WESTON SALES, INC.; MCCAIN FOODS LTD; and, MCCAIN FOODS USA, INC.,<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

JURISDICTION AND VENUE ............................................................................................. 2

PARTIES ............................................................................................................................... 4

PLAINTIFF............................................................................................................................ 4

DEFENDANTS ...................................................................................................................... 4

     A.     Cavendish Farms ................................................................................................ 4

     B.     Circana .............................................................................................................. 4

     C.     J.R. Simplot Company ...................................................................................... 5

     D.     Lamb Weston ..................................................................................................... 5

     E.     McCain Foods ................................................................................................... 6

AGENTS AND CO-CONSPIRATORS ................................................................................. 6

FACTUAL ALLEGATIONS ................................................................................................. 7

     A.     Background on the Frozen Potato Industry ....................................................... 7

     B.     Defendants' Synchronized Price Increases in Furtherance of the Conspiracy ................................................................................................................................... 9

     C.     Defendants' Anticompetitive Conduct Caused Unprecedented Anticompetitive Price Increases for Frozen Potatoes ........................................... 12

     D.     The Structure and Characteristics of the Frozen Potato Market Render the Conspiracy Economically Plausible ................................................................. 14

CLASS ACTION ALLEGATIONS ..................................................................................... 20

DEFENDANTS ARE ENGAGED IN A CONTINUING ANTITRUST VIOLATION............... 23

PLAINTIFF DID NOT DISCOVER, NOR COULD HAVE DISCOVERED THROUGH
     REASONABLE DILIGENCE THE CLAIMS IN THIS LAWSUIT EARLIER ............. 24

DEFENDANTS FRAUDULENTLY CONCEALED THEIR CONSPIRACY ......................... 25

ANTICOMPETITIVE EFFECTS OF DEFENDANTS' CONDUCT......................................... 26

CLAIMS FOR RELIEF ....................................................................................................... 27

VIOLATIONS OF STATE ANTITRUST AND CONSUMER PROTECTION LAWS ............ 29

PRAYER FOR RELIEF ...................................................................................................... 48

Plaintiff Schilliano, LLC d/b/a Illiano's Ristorante & Pizzeria ("Plaintiff") brings this action on behalf of itself, and all others similarly situated to recover damages and obtain injunctive relief against Defendants for violations of: (i) the antitrust laws of the United States; and (ii) the antitrust and consumer protection laws of the states set forth herein. Plaintiff alleges as follows based on personal knowledge as to itself, and on information and belief as to all others.

## <u>INTRODUCTION</u>

1.      Defendants Cavendish Farms, Ltd. and Cavendish Farms, Inc. (collectively, "Cavendish"), Circana, LLC ("Circana"), J.R. Simplot Company ("Simplot"), Lamb Weston Holdings, Inc., Lamb Weston, Inc.; Lamb Weston BSW, LLC; Lamb Weston/Midwest, Inc.; Lamb Weston Sales, Inc. (collectively, "Lamb Weston"), and McCain Foods, Ltd. and McCain Foods USA, Inc. (collectively, "McCain")[1]—are the largest producers and sellers of frozen french fries, hash browns, tater tots and other frozen potato products (collectively, "Frozen Potato" or "Frozen Potatoes") in the United States.[2] This is a highly concentrated industry and these four Defendants control over 95% of the Frozen Potatoes market.

2.      Starting as early as January 1, 2021, and continuing to the present ("Class Period"), Defendants and their co-conspirators conspired to fix, raise, maintain, and stabilize the price of Frozen Potatoes in the United States. Defendants implemented and executed their conspiracy by increasing the price of Frozen Potatoes at nearly identical times, leveraging a temporary spike in input costs to justify permanent industry-wide price increases, and utilizing other available means to exploit their collective market power and artificially increase prices of Frozen Potatoes.

---

[1] Collectively, these Defendants (which excludes Defendant Circana) will be referred to as the "Producing Defendants."

[2] AAGGRRII, *Industry's Top French Fry Producers*, https://aaggrrii.com/case-studies/french-fry-producers.

3. Defendants' anticompetitive conspiracy has led to record profits and revenues during the Class Period. Defendant Lamb Weston reported that its first quarter fiscal year 2024 net income increased 111% year-over-year.[3] From July 2023 to June 2024, although sales *volume* remained flat, Frozen Potato sales in dollars increased by 14.6%.[4] Likewise, between July 2022 and July 2024, Frozen Potato prices jumped 47%.

4. Defendants' wrongful and anticompetitive actions had the intended purpose and effect of artificially fixing, raising, maintaining, and stabilizing the price of Frozen Potatoes to Plaintiff and members of the Classes (as defined herein) to overpay. As a direct result of Defendants' concerted pricing and supply side decision making, Frozen Potato prices in the United States have been artificially inflated since at least January 1, 2021, causing businesses such as Plaintiff and members of the Classes to pay more for Frozen Potatoes than they would have but for the Defendants' agreement.

5. On behalf of a proposed class of thousands of businesses nationwide, Plaintiff brings this class action to put an end to Defendants' illegal scheme, to recover damages, and to restore competition in the Frozen Potato marketplace.

## JURISDICTION AND VENUE

6. This action arises under Section 1 of the Sherman Act (15 U.S.C. § 1), and Section 16 of the Clayton Act (15 U.S.C. § 26). Plaintiff's Sherman Act claim seeks injunctive relief, costs of suit, and reasonable attorney's fees, and the state law claims seek injunctive relief, damages,

---

[3] Bill McColl, *Lamb Weston's Profit Soars on Higher Prices and Shares of the Potato Processor Jump*, INVESTOPEDIA.COM, Oct. 5, 2023, *available at* https://www.investopedia.com/lamb-weston-profit-soars-on-higher-prices-and-shares-jump-8348245.

[4] T.G. Lynn, *U.S. Frozen Potato Market Thrives Amid Challenges: Opportunities for Future Growth*, POTATOES NEWS, Oct. 23, 2024, *available at* https://potatoes.news/u-s-frozen-potato-market-thrives-amid-challenges-opportunities-for-future-growth/.

costs of suit, and reasonable attorneys' fees.

7.     This Court has subject matter jurisdiction pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331, 1333(d), 1337(a), and 1367.

8.     This Court has personal jurisdiction over all Defendants pursuant to Section 12 of the Clayton Act, 15. U.S.C. § 22 and 28 U.S.C. § 1391. Venue is proper because Defendants reside, transact business, and can be found in this District.

9.     Defendants' unlawful, anticompetitive conduct substantially affected interstate commerce throughout the United States, causing injury to Plaintiff and the geographically dispersed Class Members.

10.    Venue is appropriate in this District under Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391(b), (c) and (d), because one or more Defendants resided or transacted business in this District, is licensed to do business or is doing business in this District, and because a substantial portion of the affected interstate commerce described herein was carried out in this District.

11.    This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of Frozen Potatoes throughout the United States, including this District; (c) had substantial contacts with the United States, including this District; and/or (d) engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including this District.

12.    The activities of the Defendants and all co-conspirators, as described herein, were within the flow of, were intended to, and did have direct, substantial and reasonably foreseeable

3

effects on the interstate commerce of the United States.

13.     No other forum would be more convenient for the parties and witnesses to litigate this case.

## PARTIES

### PLAINTIFF

14.     Plaintiff Schilliano, LLC d/b/a Illiano's Ristorante & Pizzeria is a limited liability company registered under the laws of Connecticut.  It operates a restaurant at 404 South Main Street, Middletown, Connecticut, where it indirectly purchased Frozen Potatoes, including french fries, for commercial use during the Class Period and suffered antitrust injury because of the violations alleged in this Complaint.

### DEFENDANTS

**A.     Cavendish Farms**

15.     Defendant Cavendish Farms, Inc. is a Delaware corporation, that maintains its primary United States office located at 25 Burlington Mall Road, Burlington, Massachusetts, and a manufacturing plant located at 5855 Third Street, S.E. Jamestown, North Dakota. Cavendish Farms, Inc. is a wholly owned subsidiary of Defendant Cavendish Farms, Ltd., a company existing under the laws of the Province of New Brunswick, Canada with its principal place of business located at 100 Midland Dr. Dieppe, New Brunswick, Canada E1A 6X4.

16.     Cavendish manufactures frozen french fries and potato products at facilities throughout the United States and is the fourth largest processor of Frozen Potato products in North America. At all times relevant to this action, Cavendish was doing business in the State of Illinois.

**B.     Circana**

17.     Circana LLC is a Delaware company with its principal place of business located in Chicago, Illinois. Circana emerged from the 2022 merger between Information Resources, Inc.

4

and the NPD Group. Circana is a data analytics and market research company that aims to provide its customers with full-circle views of consumer behavior.[5] Defendants willingly provide their input, supply and pricing data with Circana knowing it will be distributed to one another.

18.     Circana publishes and sells a variety of reports, including PotatoTrac. PotatoTrac includes quarterly survey data of all potato products moving from manufacturers to food service outlets.

## C.     J.R. Simplot Company

19.     Defendant J.R. Simplot Company is a Nevada corporation with its principal place of business located at 1099 West Front Street, Boise, Idaho.

20.     Simplot manufactures Frozen Potatoes at facilities throughout the United States. Simplot is one of the largest potato companies in the world, with gross revenue in 2020 exceeding $6 billion. At all times relevant to this action, Simplot was doing business in the State of Illinois.

## D.     Lamb Weston

21.     Defendant Lamb Weston Holdings, Inc. is a Delaware corporation with its principal place of business located at 599 South Rivershore Lane, Eagle, Idaho. It owns and operates a collection of subsidiaries all involved in the production and marketing of Frozen Potatoes, including Defendants Lamb Weston, Inc., Lamb Weston BSW, LLC, Lamb Weston/Midwest, Inc. and Lamb Weston Sales, Inc.

22.     Lamb Weston Holdings, Inc. is a publicly traded company on the New York Stock Exchange. Lamb Weston is the world's second largest producer of branded and private-label Frozen Potato products, including french fries, tots and hash browns. Approximately 86% of Lamb Weston Holdings, Inc. products are distributed within the food-service industry, while the

---

[5] https://progressivegrocer.com/meet-circana-new-name-iri-and-npd.

remaining 14% are sold at retail.

23.     At all times relevant to this action, Lamb Weston was doing business in the State of Illinois.

**E.      McCain Foods**

24.     Defendant McCain Foods USA, Inc. is a Maine corporation with its principal place of business located at One Tower Lane, 11th Floor, Oakbrook Terrace, Illinois. Defendant McCain Foods USA, Inc. is a wholly owned subsidiary of Defendant McCain Foods Limited, a company existing under the laws of the Province of New Brunswick, Canada, with its principal place of business located at 439 King Street West, 5th Floor, Toronto, Ontario, Canada.

25.     McCain's products are manufactured throughout the United States at several food processing facilities. McCain is one of the world's largest manufacturers of Frozen Potatoes. McCain also produces other foods, including snacks, appetizers, meals and vegetables. McCain sells its products at retail as well as to food-service companies. McCain has significant operations in the United States, and at all times relevant to this action, McCain was doing business in the State of Illinois.

<u>**AGENTS AND CO-CONSPIRATORS**</u>

26.     Defendants' acts were performed by their respective officers, directors, agents, employees or representatives while actively engaged in the management, direction, control or transaction of Defendants' business affairs.

27.     Various other persons, firms and corporations not named as Defendants have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy. Defendants are jointly and severally liable for the acts of their Co-conspirators, whether or not the Co-conspirators are named as Defendants in this Complaint.

28.     Whenever reference is made to any act of any corporation, the allegation means

6

that the corporation engaged in the act by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affair.

29.     Each Defendant named herein acted as the agent or joint-venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

30.     Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers and acquisitions.

## FACTUAL ALLEGATIONS

### A.     Background on the Frozen Potato Industry

31.     Potatoes are the leading vegetable crop in the United States, and the United States is the fifth largest producer of potatoes in the world. Billions of pounds of potatoes are produced in the United States every year. For instance, in 2023, nearly a million acres of potatoes were harvested in the United States, producing 44 billion pounds of potatoes. Of those 44 billion pounds, 41 billion were sold for a total value of $5.3 billion USD.[6]



---

[6] A "cwt," or "hundredweight," is equal to 100 pounds.

32.    Approximately 70% of potatoes sold in the United States are sold to processors for Frozen Potatoes, chips, shoestrings, dehydrated potatoes, and other potato products.



33.    Of the potatoes sold to processors, approximately 60% are used for frozen french fries and other frozen products which, in 2023, accounted for 17.6 billion pounds of potatoes. According to one estimate, the average American consumes nearly 48 pounds of Frozen Potatoes each year.



34.     Frozen Potatoes are produced in a multi-step process that is highly automated using specialized machines. These machines clean and peel potatoes, cut them into strips or other shapes, blanch, dehydrate, par-fry, freeze, pack, and store them.

35.     Frozen Potato producers typically acquire potatoes in mass quantities from potato growers and produce a variety of products in their factories. They sell these products to a variety of customers, including the food service industry, which consists of restaurants, hotels, schools, hospitals and other facilities; and, in retail channels, including grocery stores, convenience stores and other retailers such as Target and Wal Mart. Food distributors also purchase Frozen Potatoes from producers.

36.     Frozen Potatoes are intended to be sold to commercial foodservice entities, such as Plaintiff and the Classes. Frozen Potatoes are popular both in the foodservice and retail sectors. Throughout the Class Period, french fries appeared on 59-60% of restaurant menus nationwide.[7] Retail sales of Frozen Potatoes increased nearly 10% from 2019 to 2024.[8]

**B.     Defendants' Synchronized Price Increases in Furtherance of the Conspiracy**

37.     Defendants engaged in a conspiracy to fix and raise the price of Frozen Potatoes throughout the Class Period. Upon information and belief, Defendants' conspiracy was implemented by their exchange of detailed, competitively sensitive, and closely guarded, non-public information about Frozen Potatoes.

38.     Defendants coordinated price increases at identical or near-identical times during the Class Period to the detriment of Plaintiff and the Class. Defendants sent price increase letters

---

[7] T.G. Lynn, *U.S. Frozen Potato Market Thrives Amid Challenges: Opportunities for Future Growth*, POTATOES NEWS, Oct. 23, 2024, *available at* https://potatoes.news/u-s-frozen-potato-market-thrives-amid-challenges-opportunities-for-future-growth/.

[8] *Id*.

to their customers, noting the amount, outlining an effective date, and sometimes including purported justifications.

39.     In January 2021, Simplot and McCain each sent price increase letters to their customers within one day of each other. These letters indicated that the cost of Frozen Potatoes would increase by $0.04 per pound. Simplot also notified Plaintiff and the Class that the price of line flow potato products would increase by $0.02 per pound. In January of 2021, Simplot and McCain each sent price increase letters within one day of each other. These letters indicated that the cost of Frozen Potatoes would increase by $0.04 per pound. Simplot also notified Plaintiff and the Classes that the price of line flow potato products would increase by $0.02 per pound. The letters sent by Simplot and McCain both indicated an effective date of March 15, 2021.

40.     In May 2021, Lamb Weston and McCain sent price increase letters within two weeks of each other. The Lamb Weston letter indicated that the cost of Frozen Potatoes would increase by $0.08 per pound, while the McCain price increase letter indicated that the cost of Frozen Potatoes would increase by $0.04 per pound. The letters sent by Lamb Weston and McCain had effective dates of July 1, 2021 and July 15, 2021, respectively. Furthermore, on June 4, 2021, Cavendish sent price increase letters indicating that the cost of Frozen Potatoes would increase by $0.04 per pound. The Cavendish letter had an effective date of July 15, 2021, the same day as McCain's price increase.

41.     In October 2021, Lamb Weston, McCain, and Cavendish each sent price increase letters within five days of each other. The price increase letters all indicated that the cost of Frozen Potatoes would increase by $0.08 per pound, and all had the same effective date—December 15, 2021.

42.     In February of 2022, Defendants Lamb Weston, McCain, Simplot and Cavendish

each sent price increase letters within five days of one another. The McCain and Cavendish letters indicated that the cost of Frozen Potatoes would increase by $0.12 per pound, while the Lamb Weston price increase letter indicated that the cost of Frozen Potatoes would increase by $0.10 per pound. The price increase letters had the same effective dates of April 1, 2022. And on April 8, 2022, Cavendish sent a price increase letter indicating that the cost of Frozen Potatoes would increase by $0.07 per pound, with an effective date of May 15, 2022.

43.     In a competitive market, price increases would be viewed by competitors as opportunities to increase market share through more competitive pricing. However, this was not the case in the Frozen Potato industry as confirmed by Lamb Weston's former Vice-President who admitted their prices increase: "will probably be exactly the price increase that McCain wanted, which was $0.04 on A grade and $0.02 they will announce a price increase." The former Vice President added, "And they hope McCain will follow, and Simplot will follow, and Cavendish will follow."[9] These public signaling statements were in furtherance of Defendants' conspiracy to artificially increase Frozen Potato as alleged in this Complaint. Additionally, a former Senior Director of McCain Foods stated around 2023 that he wanted to compete with Lamb Weston on the price and market share of battered fries but the "higher ups in the room…[thought] we're going to screw it up for everyone. So we shouldn't risk it." Around the same time, a former VP at Lamb Weston stated there was "absolutely. 100%" no incentive to fight for each other's market share and that they were "behaving themselves."

/ / /

/ / /

---

[9]     Transcript of Conversation with Paul Burger, available at https://app.tegus.co/guest/document/view/67Hf3DiMGQ944SkfpRhLfNeiqekjA67sm2dxTCYtjo ggUaJXk2chDg9wxMnZ (last accessed Nov. 17, 2024).

## C. Defendants' Anticompetitive Conduct Caused Unprecedented Anticompetitive Price Increases for Frozen Potatoes

44.     During the Class Period, the price of french fries and other Frozen Potato products has risen dramatically. Plaintiff analyzed the Produce Price Index (PPI) of Frozen Potatoes, which as demonstrated by Figure 1 shows an increase over time in Frozen Potato prices, with a notable spike commencing at the start of the Class Period.

FIGURE 1: PPI FROZEN POTATOES[10]



---

[10] The PPI of Frozen Potato products comes from the Federal Reserve Economic Data. *Producer Price Index by Commodity: Processed Foods and Feeds: Frozen Potato Products (French-Fried, Patties, Puffs, etc.)*, FRED, *available at* https://fred.stlouisfed.org/series/WPU024502.

45.      Figure 2 illustrates the same data with an added trend line, showing the projection of Frozen Potatoes prices. The 1991-2022 dashed trendline shows the trajectory of prices of Frozen Potatoes prior to the beginning of the Class Period, extended to show the expected prices during the Class Period. Figure 2 shows that, prior to the Class Period, prices for Frozen Potatoes generally followed a relatively stable trendline, before spiking during the Class Period. Examination of these price spikes indicates that they cannot be explained by non-conspiratorial explanatory variables including the price of potatoes, price of cooking oil, and wages of Frozen Potato manufacturers.

FIGURE 2: PPI FROZEN POTATOES WITH TRENDLINE



13

46.     This analysis confirms that Defendants' anticompetitive conduct caused dramatic and unprecedented price increases in the Frozen Potato market.

**D.     The Structure and Characteristics of the Frozen Potato Market Render the Conspiracy Economically Plausible**

**1.     <u>The Frozen Potato Industry is Highly Concentrated</u>**

47.     The Frozen Potatoes industry is concentrated, with just a few producers controlling the supply. Defendants comprise the four largest domestic sellers of Frozen Potatoes in North America, collectively holding over 95% of the market.[11] According to one November 2023 analysis, Lamb Weston held more than a 40% market share, followed by McCain at 30%, Simplot at 20%, and Cavendish at 7–8%.[12]

48.     Defendants have long controlled the United States Frozen Potatoes market. Indeed, a 2001 book found that just three Defendants—Lamb Weston, McCain and J.R. Simplot—had a collective market share of 80%.[13] At present, Defendant Cavendish self-identifies as "the 4th largest processor of Frozen Potato products in North America."[14]

49.     This high market concentration paved the way for conspiracy, since Defendants only needed to agree with, and police, a few market participants for their price-fixing agreement to be successful. Moreover, their large market shares gave them the collective power to impose and sustain the price increases described herein.

---

[11]  *Price Increases on French Fries Sold to Restaurants, Bars Generate Accusations of Coordination*, 10 CAPITOL F. 299, 4 (May 19, 2022).

[12]  Morningstar, *Lamb Weston's Low-Cost Production and Solid Execution Capitalize on Continued Growth of Fries* (Nov. 20, 2023), https://www.morningstar.com/company-reports/1194572-lamb-westons-low-cost-production-and-solid-execution-capitalize-on-continued-growth-of-fries.

[13]  *See* E. Schlosser, FAST FOOD NATION: THE DARK SIDE OF THE ALL-AMERICAN MEAL, at p. 116–17, Houghton Mifflin: Boston (2001).

[14]  *See* Cavendish Farms, https://us.cavendishfarms.com/en/our-story/ .

50.     President Biden has repeatedly clamored against the historic levels of economic concentration across the United States, describing it as "troubling" while vowing to "be the first president in four decades to reverse this trend." Highlighting the heightened scrutiny of anticompetitive behavior in the United States in recent years, the Biden Administration launched "a new Strike Force to crack down on unfair and illegal pricing" in March 2024. The task force is jointly led by the FTC and the DOJ.

### 2.     Frozen Potatoes Are a Substitutable Commodity Product, Which Encourages Collusion

51.     Frozen potatoes are a commodity product and Defendants' Frozen Potato products do not differ significantly in terms of quality, appearance, or use, rendering them functionally interchangeable. Frozen potatoes are generally produced and sold to standard specifications (*e.g.*, grade of potatoes, style, dimensions, color, size, free fatty acid content, weight, method of cooking, etc.) and must adhere to standards set by the U.S. Department of Agriculture for production, packing, labeling, and packaging to be competitive. (*See generally*, U.S. Dept. of Agric., Commodity Specification for Frozen Potato Products (December 2021).)

52.     When products are interchangeable, companies generally are forced to win business by competing on price. Thus, cartels are more likely to form between competitors selling interchangeable products as means to avoiding price-based competition and because cartel members can more easily monitor and detect defections from a price-fixing agreement.

### 3.     The Frozen Potato Market is Characterized by Inelastic Demand

53.     Demand is considered inelastic when a seller can increase prices without suffering a substantial reduction in demand. Demand inelasticity allows for collusion, because it enables producers to raise their prices collectively without triggering substitution to alternative products that could make the conspiratorial prices unprofitable.

54.     Consumer demand for Frozen Potatoes is relatively unaffected by price because Frozen Potatoes are historically considered to be an inexpensive good, and even when prices fluctuate, they comprise a small share of consumers' budgets. Moreover, as one analyst noted in 2023, "since potatoes are the most popular vegetable among U.S. consumers, the demand for potatoes is more price inelastic than that for less popular vegetables."[15]

55.     Pricing for Frozen Potatoes is highly inelastic, in part, because there are no adequate substitutes. Frozen Potatoes are sold in virtually all restaurants and grocery stores throughout the United States. This is because, due to their reduced preparation and ease of use, Frozen Potatoes are commercially accepted on a large scale. Although there are potential substitute products, such as fresh potatoes, the characteristics of those products lack the unique characteristics of Frozen Potatoes that make them attractive to both commercial and residential customers.

56.     Indeed, according to Defendant Lamb Weston, "[a] larger share of customers [are] adding [french fries] to meal orders than in the past." Lamb Weston's CEO, Thomas Werner, noted during a recent earnings call that: "[t]he fry attachment rate has stayed pretty consistent," though "[i]t's been above historical levels for the past two, three years," despite mounting reasons to tighten purse strings."[16]

57.     While demand for Frozen Potatoes—as a category—is relatively unaffected by price, competition *within* the industry would have allowed commercial consumers to choose the cheapest brand. Put another way, had Defendants not coordinated their price increases, consumers

---

[15] Potatopro.com, *US Potato Prices Expected to Ease but Stay Elevated according to Rabobank Report* (June 6, 2023), *available at* https://www.potatopro.com/es/news/2023/us-potato-prices-expected-ease-maintain-elevated-levels-rabobank-report.

[16] CNBC, *Demand for french fries reflects resilient consumer as so-called fry attachment rate holds steady* (Apr. 5, 2024) https://www.cnbc.com/2024/04/05/demand-for-french-fries-reflects-resilient-consumer-as-so-called-fry-attachment-rate-holds-steady.html.

would have preferred the cheapest brand.

### 4.    Defendants Had Numerous Opportunities to Collude

58.    Defendants have had ample opportunities to collude through trade association meetings, via movement of executives from one co-conspirator to another, and other contacts.

59.    Each of the Producing Defendants is a "sustaining member" of the National Potato Council ("NPC").[17] The NPC bills itself as "the advocate for the economic well-being of the U.S. potato growers on federal legislative, regulatory, environmental, and trade issues."[18] The NPC holds annual and seasonal meetings each year, as well as an annual "Potato Expo" and countless other meetings, summits, and leadership institutes which, combined, provide ample opportunities for Defendants to collude. Defendants Simplot, Lamb Weston, and McCain sponsored the 2024 Potato Expo held in Austin, Texas.[19]

60.    Three Defendants are also "sustaining partners" of the World Potato Congress. McCain and Simplot are "platinum" partners, while Cavendish is a "silver" partner. The Congress's vision is to be "[r]ecognized world-wide as the premier global potato networking organization," and its mission is to "create networks to help drive sustainable growth of the potato."[20] The Congress's biennial meetings and networking focus provided opportunities for collusion as well.[21]

61.    Defendants McCain and Cavendish sponsored the March 2024 Northeast Potato

---

[17] *See* https://www.nationalpotatocouncil.org/who-we-are/allied-partners/sustaining-members/.

[18] *See* https://www.nationalpotatocouncil.org.

[19] *See* https://www.nationalpotatocouncil.org/potato-expo/sponsors/.

[20] *See* https://potatocongress.org/about/.

[21] *See* https://potatocongress.org/sustaining-partners/presidents-invitation/.

Technology forum in Charlottetown, PEI Canada.[22] The forum bills itself as an opportunity to "discuss potato research and promote collaboration and information exchange."[23]

62.    Defendants Simplot, McCain, and Lamb Weston sponsored the July 2024 Potato Sustainability Alliance Summer Symposium at McDonald's headquarters in Chicago, IL.[24] The Potato Sustainability Alliance bills itself as "an inclusive, pre-competitive collaboration of all players in the potato value chain."[25]

63.    Each Producing Defendant played a pivotal role in the formation of The Alliance for Potato Research & Education ("APRE"). APRE is a not-for-profit organization funded by the potato industry, including potato growers and potato food manufacturers. It is "dedicated to advancing the scientific understanding of the role potatoes play in promoting the health of all people."[26]

64.    Defendants Lamb Weston, Simplot, McCain and Cavendish created APRE to fund research and educate consumers about the health benefits of potatoes in all food sectors. Defendant Lamb Weston no longer participates in APRE despite being instrumental in its creation.

65.    Defendant Simplot's Jolyn Rasmussen is currently the Chair of APRE's Board of Directors. Defendant McCain Foods USA's Daniel Metheringham is APRE's Secretary/Treasurer. Peter Johnston of Defendant Cavendish Farms and Blair Richardson of Potatoes USA serve on APRE's Board of Directors.[27]

66.    Circana's PotatoTrac publication provides another avenue by which Defendants

---

[22] *See* https://northeastpotato.com/.

[23] https://northeastpotato.com/wp-content/uploads/2023/03/2023_NEPTF_Abstract_Book.pdf.

[24] *See* https://potatosustainability.org/symposium/#agenda.

[25] *See* https://potatosustainability.org/about-the-alliance/.

[26] https://apre.org/about-apre/.

[27] https://apre.org/about-apre/.

collude and effectuate their conspiracy. It gives frozen potato producers detailed reports of the entire market, allowing Defendants and their co-conspirators to work together to maximize margin while limiting competition and raising and maintaining artificially high prices for Frozen Potatoes.

67. According to the *Potato Grower* magazine, PotatoTrac provides "SKU level data for all frozen potato shipments from the four major frozen potato processors – Cavendish, (Lamb-Weston), McCain, and Simplot – to all U.S. foodservice customers, as well as foodservice exports from the U.S. to foreign countries…While the PotatoTrac figures do not account for 100 percent of the frozen potato products sold to U.S. foodservice distributors and operators, they account for an estimated 93 percent of the total by the participants."[28]

68. PotatoTrac's subscribership is limited to Defendants. Defendants share their internal production and pricing information with Potato Trac knowing that the publication is distributed to its "competitors." This sharing of competitively sensitive information provides a mechanism by which Defendants can police one another, ensuring that the supply and pricing goals of the conspiracy are realized.

69. The U.S. Supreme Court recognized as early as 1921 that agreements to exchange competitively sensitive information can be "inconsistent with that free and unrestricted trade which the [Sherman Act] contemplates shall be maintained." *Am. Column & Lumber Co. v. United States*, 257 U.S. 377, 409 (1921). In addition, the Supreme Court has long held that information exchange among competitors satisfies the concerted-action element of Section 1. This could include any information-sharing arrangements run by a third-party reporting service (such as Circana's PotatoTrac), in which participants agree to share their information with the third party.

/ / /

---

[28] https://www.potatogrower.com/2009/02/potatotrac-reports-give-marketing-data.

### 5.   There Are High Barriers to Entry in the Frozen Potato Industry

70.    Under normal circumstances, a collusive agreement amongst horizontal competitors would attract new market entrants. However, high barriers to entry in the Frozen Potatoes industry have prevented new firms from entering the market.

71.    In particular, any new entrant would need to invest significant start-up capital on plants, specialized equipment, labor, infrastructure for distribution, and regulatory compliance. In addition, producers of Frozen Potato products are typically either vertically integrated (i.e., they grow their own potatoes), such as Defendant J.R. Simplot, or they have long established farm partners from whom they source their potatoes. This makes *de novo* entry by new participants even more challenging.

72.    As a result, new competitors were prevented from responding to the supra-competitive prices caused by Defendants' price-fixing agreement by entering the market, thus facilitating Defendants' conspiracy.

## CLASS ACTION ALLEGATIONS

73.    Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a), (b)(1) and (b)(2) of the Federal Rules of Civil Procedure on behalf of the members of a class of commercial indirect purchasers seeking injunctive relief (the "Nationwide Class") defined as follows:

> All entities who indirectly purchased Frozen Potatoes from defendants or co-conspirators for commercial food preparation between January 1, 2021 and the present.

74.    Plaintiff also brings this action on behalf of themselves, and all others similarly situated as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3), seeking damages as well as equitable relief, on behalf of the following class (the "State Law Class"):

All persons and entities who indirectly purchased Frozen Potatoes from defendants or co-conspirators for commercial food preparation in Alabama, Arizona, Arkansas, California, Colorado, Connecticut, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and/or Wisconsin between January 1, 2021 and the present.

75.     Specifically excluded from the Nationwide Class and State Law Class (collectively "Classes") are Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant. Also excluded from these Classes is any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, any business majority-owned by any such person, and any Co-conspirator identified in this action.

76.     **Numerosity**: Plaintiff does not know the exact number of Class Members[29] because such information presently is in the exclusive control of Defendants. Plaintiff believes that due to the nature of the trade and commerce involved, there are thousands of Class Members geographically dispersed throughout the United States, such that joinder of all Class Members is impracticable.

77.     **Typicality**: Plaintiff's claims are typical of the claims of the Classes because Plaintiff purchased Frozen Potatoes indirectly from one or more of the Defendants, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Classes and the relief sought is common to the Classes.

78.     **Common Questions Predominate**: There are questions of law and fact common

---

[29] Class Members refers to the members of the Classes as defined in this Complaint.

to the Classes, including, but not limited to:

    A.    Whether Defendants and their co-conspirators engaged in an agreement, combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of Frozen Potatoes sold in interstate commerce in the United States;

    B.    The duration of the conspiracy alleged herein, and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

    C.    Whether the alleged conspiracy violated the antitrust laws;

    D.    Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of the Plaintiff and Class Members;

    E.    The effect of Defendants' alleged conspiracy on the prices of Frozen Potatoes sold in the United States and applicable states listed in the State Law Class during the Class Period;

    F.    Whether Plaintiff and other members of the Classes are entitled to, among other things, injunctive relief and if so, the nature and extent of such injunctive relief; and

    G.    The appropriate class-wide measure of damages.

These and other questions of law or fact which are common to the members of the Classes predominate over any questions affecting only individual members of the Classes.

79.    **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Classes in that Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Classes who indirectly purchased Frozen Potatoes and Plaintiff has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent themselves

and the Classes.

80.     **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged Class Members is impractical. Prosecution as a class action will eliminate the possibility of duplicative litigation. The relatively small damages suffered by individual Class Members compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for Class Members to seek redress for the violations of law herein alleged. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. Therefore, a class action presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

81.     The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

82.     Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief appropriate with respect to the Classes as a whole.

## DEFENDANTS ARE ENGAGED IN A CONTINUING ANTITRUST VIOLATION

83.     During the Class Period, Defendants continued to sell Frozen Potatoes to Plaintiff and other putative Class Members at prices artificially inflated by Defendants' price-fixing conspiracy.

84.     Due to ever-fluctuating economic and market conditions, Defendants needed to continually renew, monitor, and adjust their price-fixing agreement. This resulted in multiple coordinated price increases throughout the Class Period, as described above. Moreover, each of

these activities resulted in new, overt acts that injured Plaintiff and the putative Classes, thus creating a new cause of action for purposes of the statute of limitations.

85.    In addition, each sale of Frozen Potatoes made to Plaintiff or the putative Classes that was artificially inflated as a result of the conspiracy also constituted a new, overt act that restarted the statute of limitations.

86.    These new, overt acts—which would not have occurred had the conspiracy disbanded—were not merely reaffirmations of Defendants' previous acts. Rather, they were new and independent acts that were necessary to renew and refine Defendants' agreement, resulting in new and accumulating injury to Plaintiff and the other members of the proposed Classes.

87.    As a result, Defendants engaged in a continuing antitrust violation throughout the Class Period and, regardless of any tolling- and estoppel-related arguments, Plaintiff's claims and those of the putative Classes are not time barred.

## PLAINTIFF DID NOT DISCOVER, NOR COULD HAVE DISCOVERED THROUGH REASONABLE DILIGENCE THE CLAIMS IN THIS LAWSUIT EARLIER

88.    Plaintiff's antitrust claims are governed by the discovery rule—*i.e.*, the statute of limitations does not begin to run until discovery of the injury from the alleged violation. Prior to the investigation and analysis performed by and for Plaintiff's counsel, Plaintiff and putative Class Members did not know—nor could they have known through the exercise of reasonable diligence—that the prices they were paying for Frozen Potatoes were artificially inflated and causing them injury.

89.    Furthermore, even assuming that Plaintiff could have somehow discovered their injury sooner (which they could not have), they could not have determined that those injuries were the result of Defendants' price-fixing conspiracy. As discussed below, not only did Defendants never reveal the existence of their price-fixing conspiracy, they actively concealed its existence

by, among other things, blaming price increases on rising raw material, packaging, labor, and energy costs, as well as environmental conditions such as heatwaves and droughts. Plaintiff did not know and had no reasonable way of knowing that these statements were false and, in fact, it was being injured by Defendants' price-fixing conspiracy.

90.     For these reasons, both the discovery rule and the doctrine of equitable tolling dictate that all of Plaintiff's claims and those of the putative Classes, going back to the beginning of the Class Period, are timely.

## DEFENDANTS FRAUDULENTLY CONCEALED THEIR CONSPIRACY

91.     Throughout the Class Period, each of the Defendants effectively, affirmatively, and fraudulently concealed their conspiracy from Plaintiff and putative Class Members.

92.     In engaging in the price increases and other conspiratorial acts set forth in this Complaint, the Defendants pointed to and utilized false and misleading pretexts, including assertions that the price increases were due to rising costs of potatoes and other inputs for Frozen Potatoes. As set forth herein, and based on Plaintiff's analysis, such pretexts cannot explain or justify the prices increases set forth herein and were intended to conceal Defendants' conspiracy.

93.     As a result of this active concealment, Plaintiff and putative Class Members neither knew, nor in the exercise of due diligence could they have reasonably known, of the facts that form the basis for their claims. Thus, even if the discovery rule or equitable tolling were somehow inapplicable, Defendants should nonetheless be estopped from raising any statute of limitations defense.

/ / /

/ / /

/ / /

## ANTICOMPETITIVE EFFECTS OF DEFENDANTS' CONDUCT

94.     Defendants' anticompetitive conduct had the following effects, among others:

A.      Price competition has been restrained or eliminated with respect to Frozen Potatoes;

B.      The prices of Frozen Potatoes have been fixed, raised, stabilized, or maintained at artificially inflated levels;

C.      Indirect purchasers of Frozen Potatoes have been deprived of free and open competition; and

D.      Indirect purchasers of Frozen Potatoes paid artificially inflated prices.

95.     The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, or maintain the price of Frozen Potatoes. As a direct and foreseeable result, Plaintiff and the Classes paid supra-competitive prices for Frozen Potatoes during the Class Period.

96.     The price effects of Defendants' conduct have particularly impacted the commercial Class Members in this case, who have borne the brunt of the conspiracy, by being forced to pay higher prices for Frozen Potatoes at restaurants and retail stores. As one recent article noted, "Consumer purchases of frozen potatoes have shown minimal sensitivity to price increases, indicating inelastic demand."[30]

97.     By reason of the alleged violations of the antitrust laws, Plaintiff and the Classes have sustained injury to their businesses or property, having paid higher prices for Frozen Potatoes than they would have paid in the absence of Defendants' illegal contract, combination, or

---

[30] Potatopro.com, *US Potato Prices Expected to Ease but Stay Elevated according to Rabobank Report* (June 6, 2023), *available at* https://www.potatopro.com/es/news/2023/us-potato-prices-expected-ease-maintain-elevated-levels-rabobank-report.

conspiracy and, as a result, have suffered damages.

98.     This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## CLAIMS FOR RELIEF

### COUNT 1
### Restraint of Trade in Violation of the Sherman Act § 1
### 15 U.S.C. § 1
### (On Behalf of Nationwide Class for Injunctive and Equitable Relief)

99.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

100.    Beginning as early as January 1, 2021, the exact date being unknown to Plaintiff and exclusively within the knowledge of Defendants, and continuing through the present, Defendants and their co-conspirators entered into a continuing agreement to unlawfully and unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 by artificially reducing or eliminating competition for the pricing of Frozen Potatoes.

101.    Defendants' acts in furtherance of their combination or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

102.    Defendants' anticompetitive acts had a direct, substantial, and foreseeable effect on interstate commerce by raising and fixing prices for Frozen Potatoes throughout the United States.

103.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for Frozen Potatoes.

104.    As a result of Defendants' unlawful conduct, Plaintiff and the members of the Nationwide Class have been harmed by being forced to pay inflated, supra-competitive prices for Frozen Potatoes.

105.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and all of their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth in this Complaint. Defendants' conspiracy had the following effects, among others:

A.    Price competition in the market for Frozen Potatoes has been restrained, suppressed, and/or eliminated in the United States;

B.    Prices for Frozen Potatoes sold by Defendants, their divisions, subsidiaries, and affiliates, and all of their co-conspirators have been fixed, raised, stabilized, and maintained at artificially high, non-competitive levels throughout the United States; and

C.    Plaintiff and members of the Nationwide Class have been deprived of the benefits of free and open competition in the purchase of Frozen Potatoes.

106.    Defendants took all the actions alleged in this Complaint with the knowledge and intended effect that their actions would proximately cause the price of Frozen Potatoes to be higher than it would be but for Defendants' conduct.

107.    As a direct and proximate result of Defendants' anticompetitive conduct, Plaintiff and members of the Nationwide Class have been injured in their business or property and will continue to be injured in their business and property by paying more for Frozen Potatoes than they would have paid and will pay in the absence of the conspiracy.

108.    The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

/ / /

/ / /

## VIOLATIONS OF STATE ANTITRUST AND CONSUMER PROTECTION LAWS

109.    Plaintiff repeats and realleges, as if fully set forth herein, each allegation, and each of the state-specific causes of action described below incorporates the allegations as if fully set forth therein.

110.    During the Class Period, Defendants and their co-conspirators entered and engaged in a contract, combination, or conspiracy to fix, raise, maintain, and stabilize the price of Frozen Potato prices in various states to unreasonably restrain trade and commerce and harm consumers in violation of the various state antitrust and consumer protection laws set forth below.

111.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the alleged combination and conspiracy, including agreeing to fix, raise, maintain, and stabilize the price of Frozen Potatoes which injured Plaintiff and members of the State Law Class.

112.    Defendants and their co-conspirators engaged in actions described above for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize Frozen Potato prices at artificially high levels. As a direct and proximate result of Defendants' conduct, Plaintiff and members of the State Law Class were deprived of free and open competition and paid more to purchase Frozen Potatoes than they otherwise would have in the absence of Defendants' unlawful conduct. This injury is of the type that the antitrust and consumer protection laws of the below states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

113.    In addition, Defendants have profited significantly from the conspiracy. Defendants' profits derived from their anticompetitive conduct and come at the expense of and to the detriment of Plaintiff and members of the State Law Class.

114. Accordingly, Plaintiff and the members of the State Law Class in each of the following jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by each particular jurisdiction's law, injunction (where applicable), and costs of suit, including reasonable attorneys' fees, to the extent permitted by the following state laws.

115. Defendants' anticompetitive acts described above were knowing and willful and constitute violations of the following state antitrust and consumer protection statutes.

## COUNT 2: ALABAMA
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in Alabama)**

116. Due to Defendants' unlawful conduct, (1) competition for Frozen Potatoes was restrained, suppressed, and eliminated within Alabama; (2) Frozen Potato prices in the State of Alabama were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants' agreement was an unlawful agreement to restrain trade in the State of Alabama in violation of ALA. CODE §§ 6-5-60 *et seq.* Defendants' conspiracy substantially affected Alabama commerce and accordingly, Plaintiff and the members of the State Law Class seek all forms of relief available under ALA. CODE §§ 6-5-60 *et seq*.

## COUNTS 3 & 4: ARIZONA
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in Arizona)**

117. Defendants' conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout Arizona; (2) prices of Frozen Potatoes in the State of Arizona were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

30

118.     Defendants' agreement was an unlawful agreement to restrain trade in the State of Arizona in violation of ARIZ. REV. STAT. §§ 44-1401 *et seq.* Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under ARIZ. REV. STAT. §§ 44-1401 *et seq*.

119.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT. ANN. §§ 44-1521 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNT 5: ARKANSAS
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in Arkansas)**

120.     Defendants' conspiracy unlawfully misleads consumers into believing the price of Frozen Potatoes sold in Arkansas was the result of a free market and Defendants' conduct is substantively unconscionable because it unfairly benefits Defendants at the expense of Plaintiff and members of the Class. ARK. CODE ANN. § 4-88-107. Accordingly, Plaintiff and members of the State Law Class seek all available relief under ARK. CODE ANN. §§ 4-88-101, *et seq*., resulting from Defendants' deceptive and unconscionable trade practices.

121.

## COUNTS 6 & 7: CALIFORNIA
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in California)**

122.     Defendants' conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout California; (2) Frozen Potato prices in the State of California were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

123.     Defendants have entered into an unlawful agreement in restraint of trade in violation of CAL. BUS. & PROF. CODE §§ 16700 *et seq.* During the Class Period, Defendants

and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce. Each defendant has acted in violation of CAL. BUS. & PROF. CODE § 16720 to fix, raise, maintain, and stabilize the price of Frozen Potatoes. The violations of CAL. BUS. & PROF. CODE § 16720 consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the price of Frozen Potatoes. For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which they combined and conspired to do, including, but not limited to, the acts, practices and course of conduct set forth above, and creating a price floor, fixing, raising, and stabilizing the prices of Frozen Potatoes. As a result of Defendants' violation of CAL. BUS.&. & PROF. CODE § 16720, Plaintiff and members of the Class seek treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to CAL. BUS. & PROF. CODE § 16750(a). Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNTS 8 & 9: COLORADO
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in Colorado)

124.    Defendants' conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout Colorado; (2) Frozen Potato prices in the State of Colorado were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers.

125.    Defendants have violated Colo. Rev. Stat. §§ 6-4-101 *et seq.* Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under violated Colo. Rev.

Stat. §§ 6-4- 101, *et seq.*

126.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. §§ 6-1-101 *et seq.* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNT 10: CONNECTICUT
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in Connecticut)**

127.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Conn. Gen. Stat. §§ 35-24 *et seq.* Defendants' combinations or conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout Connecticut, and (2) Frozen Potato prices in the State of Connecticut were fixed, controlled, and maintained at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Connecticut commerce. As such, Defendants have entered into agreements in restraint of trade in violation of Conn. Gen. Stat. §§ 35-24 *et seq.* Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under Conn. Gen. Stat. §

## COUNTS 11 & 12: DISTRICT OF COLUMBIA
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in the District of Columbia)**

128.    Defendants' combinations or conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Frozen Potato prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; and (3) Plaintiff and members of the Class, including those who resided in the District of Columbia and purchased Frozen Potatoes in the District of Columbia, paid supra-competitive, artificially inflated prices for Frozen Potatoes. During the Class Period, Defendants' illegal conduct substantially affected commerce in the

District of Columbia.

129.     Defendants have entered into agreements in restraint of trade in violation of D.C. CODE §§ 28-4501 *et seq.* Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under D.C. CODE, §§ 28-4501 *et seq*.

130.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. CODE, §§ 28-3901 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNTS 13 & 14 FLORIDA
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in Florida)

131.     Through Defendants' actions and actions of co-conspirators, Frozen Potato prices in the State of Florida were raised, fixed, maintained, and stabilized at artificially high level, thereby injuring Plaintiff and the State Law Class. Throughout the Class Period, competition in the Frozen Potatoes market was restrained, suppressed, and eliminated throughout Florida. Plaintiff and members of the State Law Class, including those who purchased Frozen Potatoes in the State of Florida, paid supra-competitive, artificially inflated prices for Frozen Potatoes. During the Class Period, Defendants' illegal conduct substantially affected commerce in Florida.

132.     Defendants have violated the FLA. STAT. §§ 542.15 *et seq.,* through their anticompetitive actions. Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under FLA. STAT. §§ 542.15 *et seq*.

133.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. §§ 501.201 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNT 15: HAWAII
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in Hawaii)

134.     Defendants have violated Haw. Rev. Stat. Ann. §§ 480-1 *et seq*., through their

actions. *See* HAW. REV. STAT. §§ 480-4, 480-13. Through Defendants' actions and the actions of their co-conspirators, Frozen Potato prices in the State of Hawaii were raised, fixed, maintained, and stabilized at artificially high levels, thereby injuring Plaintiff and the State Law Class. Throughout the Class Period, price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of Hawaii. Plaintiff and members of the State Law Class, including those who resided in the State of Hawaii and purchased Frozen Potatoes in Hawaii, paid supra-competitive, artificially inflated prices for their Frozen Potatoes. During the Class Period, Defendants' illegal conduct substantially affected commerce in Hawaii. Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under HAW. REV. STAT. ANN. §§ 480-1 *et seq*.

## COUNTS 16 & 17: ILLINOIS
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in Illinois)

135. Defendants' combinations or conspiracies had the following effects: (1) price competition in the Frozen Potatoes market was restrained, suppressed, and eliminated throughout the State of Illinois, and (2) Frozen Potato prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Illinois. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

136. Defendants have entered into agreements in restraint of trade in violation of 740 Ill. Comp. Stat. 10/1 *et seq.* Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under 740 Ill. Comp. Stat. 10/1 *et seq*.

137. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. 505/1 *et seq,* and 720 Ill. Comp. Stat. 295/1a, and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNT 18 IOWA
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in Iowa)**

138.    Defendants have entered into an unlawful agreement in restraint of trade in violation of IOWA CODE § 553.1 *et seq.* Defendants' combinations or conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of Iowa, and (2) Frozen Potato prices were raised, fixed, maintained and stabilized at artificially high levels throughout the State of Iowa. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of IOWA CODE §§ 553.1 *et seq.* Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under Iowa Code §§ 553.1 *et seq.*

## COUNT 19: KANSAS
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in Kansas)**

139.    Defendants have entered into an unlawful agreement in restraint of trade in violation of KAN. STAT. ANN. §§ 50-101 *et seq.* Defendants' conspiracy had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of Kansas; (2) Frozen Potato prices in the State of Kansas were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under KAN. STAT. ANN. §§ 50-101 *et seq.*

## COUNT 20: MAINE
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in Maine)**

140.    Defendants have entered into an unlawful agreement in restraint of trade in violation of ME. STAT. TIT. 10, § 1101. Defendants' conspiracy had the following effects: (1)

price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of Maine; and (2) Frozen Potato prices in the State of Maine were raised, fixed, maintained, and stabilized at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. Accordingly, Plaintiff and members of the State Law Class seek all relief available under ME. STAT. TIT. 10, § 1104.

## COUNTS 21 & 22: MARYLAND
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in Maryland)

141.    Defendants' combinations or conspiracies detrimentally affected the price competition in the State of Maryland for Frozen Potatoes by restraining, suppressing, and eliminating competition. Furthermore, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Frozen Potato prices in the State of Maryland at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected Maryland commerce.

142.    Defendants violated the MD. CODE ANN., COM. LAW §§ 11-201 *et seq.,* by entering into unlawful agreement in restraint of trade in the State of Maryland. Accordingly, Plaintiff and members of the State Law Class seek all relief available under MD. CODE ANN., COM. LAW §§ 11-201 *et seq*.

143.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CODE ANN., COM. LAW §§ 13-101 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNTS 23 & 24: MICHIGAN
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in Michigan)

144.    Defendants' combinations or conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of Michigan, and (2) Frozen Potato prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Michigan. During the Class Period, Defendants'

illegal conduct substantially affected Michigan commerce.

145. Defendants have entered into an unlawful agreement in restraint of trade in violation of MICH. COMP. LAWS §§ 445.771 *et seq.* Accordingly, Plaintiff and members of the State Law Class seek all relief available under MICH. COMP. LAWS §§ 445.771 *et seq*.

146. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS §§ 445.903 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

### COUNTS 25 & 26: MINNESOTA
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in Minnesota)**

147. Through their actions and actions of co-conspirators, Frozen Potato prices in the State of Minnesota were raised, fixed, maintained, and stabilized at an artificially high level, thereby injuring Plaintiff and the State Law Class. Throughout the Class Period, price competition in the market for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of Minnesota. Plaintiff and members of the State Law Class, including those who resided in the State of Minnesota and purchased Frozen Potatoes there, paid supra-competitive, artificially inflated prices for Frozen Potatoes. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Minnesota.

148. Defendants have violated the MINN. STAT. §§ 325D.49 *et seq.,* through their anticompetitive actions. Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under MINN. STAT. § 325D.49 *et seq*.

149. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation MINN. STAT. MINN. STAT. §§ 325d.43-48 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

**COUNT 27: MISSISSIPPI**
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in Mississippi)**

150.    Defendants have entered into an unlawful agreement in restraint of trade in violation of MISS. CODE ANN. §§ 75-21-1 *et seq. See* MISS. CODE ANN. § 75-57-63. Defendants' combinations or conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of Mississippi, and (2) Frozen Potato prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Mississippi. During the Class Period, Defendants' illegal conduct substantially affected the State of Mississippi commerce. Accordingly, Plaintiff and members of the State Law Class seek all relief available under MISS. CODE ANN. §§ 75-21-1 *et seq.,* and MISS. CODE ANN. § 75-57-63.

**COUNTS 28 & 29: NEBRASKA**
**(On Behalf of Class Members that Purchased Frozen Potatoes in Nebraska)**

151.    Defendants' combinations or conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of Nebraska, and (2) Frozen Potato prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of Nebraska. During the Class Period, Defendants' illegal conduct substantially affected the State of Nebraska commerce.

152.    Defendants restrained trade and commerce in the State of Nebraska by entering into an unlawful agreement in violation of NEB. REV. STAT. §§ 59-801 *et seq*. Accordingly, Plaintiff and members of the State Law Class seek all relief available under NEB. REV. STAT. §§ 59-801 *et seq*.

153.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. §§ 59-1601 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNTS 30 & 31: NEVADA
### (On Behalf of Class Members that Purchased Frozen Potatoes in Nevada)

154.    Defendants' conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of Nevada; (2) Frozen Potato prices in the State of Nevada were raised, fixed, maintained, stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition.

155.    Defendants violated the NEV. REV. STAT. ANN. §§ 598A.210 *et seq.,* by entering into unlawful agreements in restraint of trade in the State of Nevada. As a result of Defendants' violation of NEV. REV. STAT. ANN. §§ 598A.210 *et seq.* Plaintiff and members of the State Law Class seek treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to NEV. REV. STAT. ANN. § 598A.210.

156.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. §§ 598.0903 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNTS 32 & 33: NEW HAMPSHIRE
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in New Hampshire)

157.    Defendants' combinations or conspiracies detrimentally affected the price competition in the State of New Hampshire Frozen Potatoes market by restraining, suppressing, and eliminating competition. Further, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Frozen Potato prices in the State of New Hampshire at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected the State of New Hampshire commerce.

158.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.H. REV. STAT. ANN. §§ 356:1 *et seq.* Accordingly, Plaintiff and members of the

State Law Class seek all relief available under N.H. REV. STAT. ANN. §§ 356:1 *et seq*.

159.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. Ann. §§ 358-A:1 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNTS 34 & 35: NEW MEXICO
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in New Mexico)

160.    Defendants' combinations or conspiracies detrimentally affected the price competition in the State of New Mexico for Frozen Potatoes by restraining, suppressing, and eliminating competition. Furthermore, Defendants' unlawful conduct raised, fixed, maintained and stabilized Frozen Potato prices in the State of New Mexico at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of New Mexico.

161.    Defendants violated the N.M. STAT. ANN. §§ 57-1-1 *et seq.,* by entering into unlawful agreements in restraint of trade in the State of New Mexico. Accordingly, Plaintiff and Members of the State Law Class seek all relief available under N.M. STAT. ANN. §§ 57-1-1 *et seq*.

162.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. §§ 57-12-1 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNT 36: NEW YORK
### (On Behalf of Class Members that Purchased Frozen Potatoes in New York)

163.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.Y. GEN. BUS. LAW §§ 340 *et seq.* Defendants' conspiracy had the following effects: (1) price competition in the market for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of New York, and (2) Frozen Potato prices were raised, fixed,

41

maintained, and stabilized at artificially high levels throughout the State of New York. During the Class Period, Defendants' illegal conduct substantially affected the State of New York commerce. The conduct set forth above is a per se violation of the Donnelly Act, N.Y. GEN. BUS. LAW §§ 340 *et seq.* Accordingly, Plaintiff and members of the State Law Class seek all relief available under N.Y. GEN. BUS. LAW §§ 340 *et seq.*

### COUNT 37: NORTH CAROLINA
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in North Carolina)**

164.　Defendants have entered into an unlawful agreement in restraint of trade in violation of N.C. GEN. STAT. §§ 75-1 *et seq.* Defendants' combinations or conspiracies had the following effects: (1) price competition in the market for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of North Carolina, and (2) Frozen Potato prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the State of North Carolina. During the Class Period, Defendants' illegal conduct substantially affected the State of North Carolina commerce. Accordingly, Plaintiff and members of the State Law Class seek all relief available under N.C. GEN. STAT. §§ 75-1 *et seq.*

### COUNT 38: NORTH DAKOTA
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in North Dakota)**

165.　Defendants' actions have violated the N.D. CENT. CODE §§ 51-08.1-01 *et seq.* through their anticompetitive actions. Through their actions and actions of co-conspirators, Frozen Potato prices in the State of North Dakota were raised, fixed, maintained, and stabilized at artificially high levels, thereby injuring Plaintiff and members of the State Law Class. Throughout the Class Period, price competition in the market for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of North Dakota. Plaintiff and members of the State Law Class, including those who resided in the State of North Dakota and purchased Frozen Potatoes

there, paid supra-competitive, artificially inflated prices. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of North Dakota. Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under N.D. CENT. CODE §§ 51-08.1-01 *et seq*.

## COUNTS 39 & 40: OREGON
### (On Behalf of Class Members that Purchased Frozen Potatoes in Oregon)

166.     Defendants' combinations or conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of Oregon; (2) Frozen Potato prices in the State of Oregon were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected the State of Oregon commerce.

167.     Defendants have entered into an unlawful agreement in restraint of trade in violation of OR. REV. STAT. §§ 646.725 *et seq.* Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under OR. REV. STAT. §§ 646.725 *et seq*.

168.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. §§ 646.605 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNTS 41 & 42: RHODE ISLAND
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in Rhode Island)

169.     Defendants' combinations or conspiracies detrimentally affected the price competition in the State of Rhode Island for Frozen Potatoes by restraining, suppressing, and eliminating competition. Furthermore, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Frozen Potato prices in the State of Rhode Island at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of

Rhode Island.

170. Defendants have entered into an unlawful agreement in restraint of trade in violation of R.I. GEN. LAWS §§ 6-36-7 *et seq.* Accordingly, Plaintiff and members of the State Law Class seek all relief available under R.I. GEN. LAWS §§ 6-36-7 *et seq*.

171. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS §§ 6-13.1-1, and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

### COUNTS 43 & 44: SOUTH DAKOTA
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in South Dakota)

172. Through their actions and actions of co-conspirators, Frozen Potato prices in the State of South Dakota were raised, fixed, maintained, and stabilized at artificially high levels, thereby injuring Plaintiff and the State Law Class. Throughout the Class Period, price competition in the market for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of South Dakota. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of South Dakota. Plaintiff and members of the State Law Class, including those who resided in the State of South Dakota and purchased Frozen Potatoes there, paid supra-competitive, artificially inflated prices for their Frozen Potatoes.

173. Defendants have violated S.D. CODIFIED LAWS §§ 37-1-3.1 *et seq.,* through their anticompetitive actions. Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under S.D. CODIFIED LAWS §§ 37-1-3.1 *et seq*.

174. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS §§ 37-24-1 *et seq.,* and, accordingly, Plaintiff and members of the State Law Class seek all relief available under that statute.

## COUNT 45: TENNESSEE
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in Tennessee)

175. Defendants have entered into an unlawful agreement in restraint of trade in violation of TENN. CODE ANN. §§ 47-25-101 *et seq.* Defendants' combinations or conspiracies had the following effects: (1) price competition for the sale of Frozen Potatoes, tangible goods, was restrained, suppressed, and eliminated throughout the State of Tennessee; (2) prices for Frozen Potatoes, tangible goods, in the State of Tennessee were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Tennessee. Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under TENN. CODE ANN. §§ 47-25-101 *et seq.*

## COUNT 46: UTAH
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in Utah)

176. Defendants violated the UTAH CODE ANN. §§ 76-10-3101 *et seq.* by entering into unlawful agreement in restraint of trade in the State of Utah. Specifically, Defendants' combinations or conspiracies detrimentally affected the price competition in the State of Utah for the Frozen Potatoes market by restraining, suppressing, and eliminating competition. Furthermore, Defendants' unlawful conduct raised, fixed, maintained, and stabilized Frozen Potato prices in Utah at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Utah. Accordingly, Plaintiff and Members of the State Law Class seek all relief available under UTAH CODE ANN. §§ 76-10-3101 *et seq.*

## COUNT 47: VERMONT
### (On Behalf of State Law Class Members that Purchased Frozen Potatoes in Vermont)

177. Defendants' combinations or conspiracies had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State

45

of Vermont; (2) Frozen Potato prices in the State of Vermont were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants have entered into an unlawful agreement in restraint of trade in violation of VT. STAT. ANN. TIT. 9, §§ 2453 *et seq.* During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of Vermont. Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under VT. STAT. ANN. TIT. 9, §§ 2465 *et seq.*

## COUNT 48: MONTANA
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in Montana)**

178.    By reason of the conduct alleged herein, Defendants have violated MONT. CODE, §§ 30-14-101, *et seq.* Defendants' unlawful conduct had the following effects: (1) Frozen Potato price competition was restrained, suppressed, and eliminated throughout Montana; (2) Frozen Potato prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff was deprived of free and open competition; and (4) Plaintiff and members of the State Law Class paid supracompetitive, artificially inflated prices for Frozen Potatoes.

179.    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff was injured and are threatened with further injury. Accordingly, Plaintiff and members of the State Law Class seek all relief available under the Montana Consumer Protection Act of 1973, MONT. CODE, §§ 30-14-101, *et seq.*

## COUNT 49: NEW JERSEY
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in New Jersey)**

180.    Defendants' conspiracy detrimentally affected the price competition for Frozen Potatoes purchased in the State of New Jersey by restraining, suppressing, and eliminating competition. Further, Defendants' unlawful conduct raised, fixed, maintained, and stabilized

Frozen Potato prices in the State of New Jersey at artificially high levels. During the Class Period, Defendants' illegal conduct substantially affected the State of New Jersey commerce.

181.    Defendants engaged in a conspiracy in restraint of the trading of Frozen Potatoes in violation of the New Jersey Antitrust Act. N.J. STAT. ANN. § 56:9-3. Accordingly, Plaintiff and members of the State Law Class seek equitable relief and compensatory damages, together with reasonable attorneys' fees, filing fees and reasonable costs of suit, including but not limited to expenses of discovery and document reproduction. N.J. STAT. ANN. § 56:9-12.

**COUNT 50: WEST VIRGINIA**
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in West Virginia)**

182.    Defendants' conspiracy had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of West Virginia; (2) Frozen Potato prices in the State of West Virginia were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Defendants have entered into an unlawful agreement in restraint of trade in violation of W. VA. CODE §§ 47-18-1 *et seq*. During the Class Period, Defendants' illegal conduct substantially affected commerce in the State of West Virginia. Accordingly, Plaintiff and members of the State Law Class seek all forms of relief available under W. VA. CODE §§ 47-18-1 *et seq*.

**COUNT 51: WISCONSIN**
**(On Behalf of State Law Class Members that Purchased Frozen Potatoes in Wisconsin)**

183.    Defendants have entered into an unlawful contract and conspiracy in restraint of trade in violation of WIS. STAT. § 133.03(1). Defendants' conspiracy had the following effects: (1) price competition for Frozen Potatoes was restrained, suppressed, and eliminated throughout the State of Wisconsin; (2) Frozen Potato prices in the State of Wisconsin were raised, fixed, maintained, and stabilized at artificially high levels; and (3) individuals have been deprived of free and open competition. Accordingly, Plaintiff and members of the State Law Class seek all forms

of relief available under WIS. STAT. § 133.03.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully pray that the Court enter judgment as follows:

1)      The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as the Class Representative and its counsel of record as Class Counsel, and direct that at a practicable time notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Classes;

2)      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

3)      The unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed a *per se* violation of Section 1 of the Sherman Act, and a violation of each of the state law statutes alleged herein;

4)      Awarding Plaintiff and the relevant Class Members compensatory damages under the state statutes in an amount to be proven at trial, multiple damages according to law against Defendants, jointly and severally;

5)      Awarding Plaintiff and the relevant Class Members punitive, exemplary, statutory, and full consideration damages under the aforementioned state laws;

6)      Ordering Defendants to disgorge their profits earned as a result of their wrongful

conduct and ordering them to make restitution to Plaintiff and Class Members;

7)      Plaintiff and the Class Members be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

8)      Plaintiff and the Class Members recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

9)      Granting Plaintiff and the Class Members such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED: February 20, 2025          By: _/s/ *Andrew M. Stroth*_____

Andrew M. Stroth
**ACTION INJURY LAW GROUP, LLC**
One South Dearborn, Suite 1400
Chicago, Illinois 60603
Tel: (844) 878-4529
astroth@actioninjurylawgroup.com

Stuart G. Gross (*Pro Hac Vice forthcoming*)
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Tel: (415) 671-4628
sgross@grosskleinlaw.com

***Attorneys for Plaintiff and the Proposed Classes***