**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE FROZEN POTATO PRODUCTS ANTITRUST LITIGATION | Civil No. 1:24-cv-11801 |
| | Judge Jeffrey I. Cummings |
| This Document Relates To: | Magistrate Judge Gabriel A. Fuentes |
| All Actions | |

**ORDER REGARDING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**

On review of the parties' joint motion for an ESI and hard copy discovery order (D.E. 319), as well as their specific disagreements about aspects of such an order (D.E. 319-2, 319-3), the Court grants the motion and resolves those disagreements within the Court's broad discretion to manage discovery under the referral, *Jones v. City of Elkhart,* 737 F.3d 1107, 1115 (7th Cir. 2013), and the need to promote the just, speedy, and inexpensive determination of the matter, Fed. R. Civ. P. 1. The competing party positions briefly covered the parties' disagreements, in enough detail to allow the Court to determine promptly which of the disputed alternatives ought to be included in the order. Importantly, the parties agree throughout the order that disputes about its application should become the subject of conferral, to which the Court expects the parties will resort as necessary once discovery under the order unfolds. The Court's resolutions of these disputes are reflected in the text of this Order below, and are summarized as follows:

- VI.C.1. TAR Methodology: Plaintiffs' version will be entered to minimize any confusion over whether responsive materials are inadvertently withheld. The parties did delve into great detail about the issue of "stacking" search terms and TAR methodology, and the pros and cons of doing so, but in the end the Court did not see Defendants' contention as persuasive on why the "or in addition to" language should be added to this paragraph.
- VI.D.1. Unsearchable Documents: Defendants' version will be entered. The Court agrees that sampling of these "unsearchable" documents, such as images and videos, is a more

efficient and proportional method than requiring individual review of each such documents. Fed. R. Civ. O. 26(b)(1).

- VII.A.2. Email Threading: Defendant's version is entered. The email threading procedure is a widely accepted and efficient alternative to producing multiple documents that contain the same communications in part or in whole, and the Court did not view Plaintiffs' submission as justifying the more burdensome procedure of producing these documents in separate pieces when those pieces ultimately are produced through the threading method.

- VII.D.1. Structured Data: Defendants' version is entered. The Court's reaction to the parties' submissions was to conclude that Plaintiffs were proposing an unnecessarily onerous procedure including disclosure of "all" data fields, and that Defendants' approach is better tethered to Rule 26(b)(1) relevancy and proportionality.

- VIII.4.(d) Categories of Documents that Need Not Be Logged: Defendants' version will be entered, as the Court is sensitive to undue burdens associated with rigid application of Rule 26(b)(5) and subscribes to application of the 2024 Sedona Conference commentary on privilege log management tailored to individual case needs, particularly in large cases such as this one. *See McDonald's Corp. v. Hiscox Dedicated Corporate Member Limited*, No. 22 C 2682, 2024 WL 6993660, at *2 (N.D. Ill. Nov. 22, 2024) (citing The Sedona Conference, *Commentary on Privilege Logs*, 25 Sedona Conf. J. 221, 228-36 (2024)).

- VIII.6. Privilege-Log Timing: Defendants' version is entered, as the Court disfavors Plaintiffs' proposal for rolling privilege log production as inefficient and unduly burdensome in a case of this size.

- VIII.9. Logging Email Threads; VIII.10. Logging of Document Families: Defendants' versions entered, as Plaintiffs' proposal for logging of "each lesser-included email in the thread" is disproportionate to the needs of the case and not in alignment with the applicable Sedona Conference privilege log commentary. *Id.*

The remainder of this order contains its substance. The Court has incorporated the above rulings into the text; other than those rulings, the content of the order is stipulated and agreed. Other than the rulings, then, the parties stipulate and agree, pursuant to Federal Rules of Civil Procedure 26 and 34(f), Federal Rule of Evidence 502(d), and the Local Rules of the United States District Court for the Northern District of Illinois, by and among the parties to this action, through their undersigned Counsel, that the following provisions of this stipulated Order ("Order") shall govern the form of production of Electronically Stored Information ("ESI") and Hard Copy Documents in each and every action consolidated for pretrial proceedings herein (this "Action").

This Order applies to any person or entity, whether a Party to this Action or not, that produces Documents in response to requests under Federal Rule of Civil Procedure 34 or 45.

## I. GENERAL PROVISIONS

1. Introduction: Unless otherwise agreed to by the Parties or ordered by the Court, this Order shall govern the search, disclosure, and format of Hard Copy Documents and ESI produced for use in this Action. The purpose of this Order is to expedite the flow of discovery and facilitate the prompt resolution of disputes should they arise.

2. Cooperation: The Parties are aware of the importance the Court places on cooperation and commit to cooperating in good faith throughout the matter consistent with this Court's guidelines. The Parties agree to cooperate in good faith regarding discovery in general, including, more specifically, the production of ESI and Hard Copy Documents.

3. Modifications: The Parties may modify this Order by agreement and shall jointly submit any such modifications to the Court.

4. Limitations and Non-Waiver.

(a) Nothing in this Order shall be construed to affect the admissibility of discoverable information, and all objections to the admissibility of any Documents are preserved and may be asserted at any time.

(b) Compliance with this Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI or Hard Copy Documents for any reason, including as irrelevant, undiscoverable, or otherwise inadmissible, not proportional, or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party.

(c) Nothing in this Order is intended to be an exhaustive list of discovery obligations or rights of the Parties, and nothing in this Order shall supersede the Parties' obligations and protections under the Federal Rules of Civil Procedure.

(d) With respect to ESI, the inclusion of a data type as an example of a type of ESI in the Definitions herein should not be construed as an agreement by a Responding Party that these types of ESI may be relevant and/or must be collected, searched, or produced.

(e) Similarly, the exclusion of a data type as an example of a type of ESI in the Definitions herein shall not be construed as agreement by the Requesting Party that these types of ESI are irrelevant and/or need not be collected, searched, or produced. Should types of ESI excluded from this Order be produced, the Parties shall meet and confer to determine any specialized handling needed to collect, process, search, and produce the ESI in a reasonably usable format (*e.g.*, unitization of chat data, source-specific Metadata fields to be captured and produced).

(f) Nothing in this Order is intended to revise or alter the local rules, applicable state or federal statutes, the Federal Rules of Civil Procedure, Advisory Committee Notes, or other authorities with regard to the preservation and production of ESI.

5. Preservation and Document Retention: Unless otherwise provided in this Order, nothing in this Order limits a Party's obligations to preserve discoverable information in the Party's

possession, custody, or control, which includes Metadata where applicable, consistent with the Federal Rules.

6. Good Faith Efforts to Meet and Confer Before Bringing any Disputes to the Court: The Parties shall meet and confer in good faith on issues regarding the production of ESI, as necessary, including any issues relating to custodians, data sources, search methodologies (*e.g.*, search terms, and other methods of identifying responsive ESI), and any other issue that arises under this Order or otherwise. No Party may seek relief from the Court concerning compliance with this Order unless and until it has exhausted all reasonable efforts to confer in good faith with other affected Parties to this Action. An objecting Party may submit a dispute to the Court in accordance with the Local Rules of this Court, and as otherwise directed by the Court.

## II. DEFINITIONS

1. Custodian(s): Any individual who a Responding Party agrees to, or is ordered to, search for potentially responsive Documents.

2. Custodial Data Source(s): Data sources in the possession, custody or control of a Responding Party and assigned to a specific Custodian, including, but not limited to, personal computers, laptops, tablets, email (whether stored locally or centrally), network folders, cloud storage locations (*e.g.*, OneDrive, Google Drive), voice mail, text messages / mobile messages (*e.g.*, SMS, MMS, iMessage, Whatsapp, Telegram), synchronous chat (*e.g.*, Teams, Jabber, Google Chat), or social media (*e.g.*, Twitter, Facebook, Instagram).

3. Document(s): Has its broadest meaning consistent with Federal Rule of Civil Procedure 34 and includes both ESI and Hard Copy Documents as well as Modern Communications.

4. Document Family: A collection of related pages or files as maintained in the ordinary course of business but consisting of more than a single stand-alone Document. A "parent Document" is an electronic file or Hard Copy Document that attaches or embeds at least one other electronic file or Hard Copy Document (a "child Document"). A "Document Family" includes, for example, emails with attachments, or MSOffice files embedded within another MSOffice Document.

5. ESI or "Electronically Stored Information": These terms are defined to be synonymous in meaning and scope to the usage of the term in Federal Rule of Civil Procedure 34(a).

6. Extracted Text: The text extracted from a Document, and includes all header, footer, and Document body information, hidden information, notes, and other such information or properties, when available.

7. Hard Copy Document(s): A Document maintained in physical form (*e.g.*, paper) and not in electronic form.

8. Image Format: The single-page TIFF file format to be used for all Documents unless produced in Native Format.

9. Load File: An electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including emails and their associated attachments, and where each Document begins and ends. A Load File may also contain data relevant to the individual Documents, including extracted and user-created Metadata.

10. Metadata: The structural information of a file that contains data about the file, as opposed to describing the content of a file. The Metadata fields to be produced with responsive Documents are listed in **Exhibit 1**.

11. Modern Communications: Communication methods other than email, voice telephone conversations, or hard-copy written correspondence, such as Channel-based communications (*e.g.*, Slack, Teams), Text messages / mobile messages (*e.g.*, SMS, MMS, iMessage, Whatsapp, Telegram), Synchronous chat (*e.g.*, Teams, Jabber, Google Chat), Collaboration tools (*e.g.*, SharePoint, wikis), Ticketing / workflow tools (*e.g.*, JIRA), Social media (*e.g.*, Twitter, Facebook, Instagram), communications in structured data applications (*e.g.* Salesforce), and Online meetings (*e.g.*, Zoom, Teams, Webex).

12. Native File(s) or Native Format: The file type or format, respectively, in which ESI was originally created and/or is normally created, viewed, or modified.

13. Non-Custodial Data Source(s): Data sources not kept or maintained exclusively by any particular Custodian, including data sources used by any department, business unit, or division of a Responding Party, such as databases, servers, group share drives or folders, cloud-based storage systems (*e.g.*, DropBox), communication platforms (*e.g.*, Slack, Teams, Zoom, Google Chat, Discord, Skype, GroupMe, WeChat, Signal, Telegram, etc.), collaboration platforms (*e.g.*, Trello, Switchboard, Mural, Microsoft 365, Gather, Asana, Google Hangouts, etc.), and social media sites (*e.g.*, Facebook, LinkedIn, etc.).

14. OCR Text: Searchable text generated through an optical character recognition process of image/bitmap picture representation of Documents.

15. Responding Party: Any Party that responds to a request for the production of Documents in this Action pursuant to Federal Rule of Civil Procedure 34 or 45.

16. Requesting Party: Any Party that requests the production of Documents in this Action pursuant to Federal Rule of Civil Procedure 34 or 45.

17. Search String: A word or a combination of words or phrases designed to capture potentially relevant documents, inclusive of strings of words and phrases joined by proximity and Boolean connectors or other syntax.

18. Structured Data: Data that resides in a fixed field within a record or file or stored in a structured format, such as in databases (*e.g.*, Oracle, SQL, and Access) or datasets, according to specific form and content rules as defined by each field of the database or dataset, and includes, to the extent maintained in the normal course of business, the file or files defining each field in the Structured Data.

## III. PRESERVATION

1. Duty to Investigate: The Parties understand and acknowledge their duty to conduct a reasonable inquiry into ESI potentially relevant to any Party's claim or defense.

2. Duty to Preserve: The Parties understand and acknowledge their duty to preserve ESI potentially relevant to any Party's claim or defense.

## IV. INACCESSIBLE DATA

1. ESI Agreed to Be Not Reasonably Accessible: Notwithstanding any other provision of this Order, the following sources of ESI are not reasonably accessible and need not be preserved. Nothing in this paragraph shall require a Party to search the below-listed sources to determine the reasonable likelihood that they contain relevant ESI unless the Party's investigation, Documents, or testimony suggest otherwise.

(a) Data stored in random access memory ("RAM"), cache memory, or in temporary internet or cache files, including internet history, web browser cache or cookie files, wherever located;

(b) Operating system files and executable files;

(c) data in Metadata fields frequently updated automatically, such as last-opened or last-printed dates, except those identified in Exhibit 1; or

(d) Data stored on photocopiers, scanners, and fax machines.

2. Other ESI Asserted to Be Not Reasonably Accessible: Nothing in this Order prevents a Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible, although Parties must take reasonable steps to preserve such ESI if potentially responsive. All Parties reserve the right to request to have a particular source of ESI searched if there is good cause to believe that the particular source contains unique relevant information.

## V. COLLECTION AND PROCESSING OF ESI

1. Generally: The Responding Party shall collect and process Documents using methods designed to preserve all reasonably available Metadata, and to the extent reasonably feasible upon collection, the Responding Party shall use the below specifications when processing its Document collection(s).

2. Track Changes: Documents shall maintain all tracked changes as last saved, to the extent available. Documents produced in Image Format shall be imaged to show track changes so that all changes to a Document are evident, unless redactions are necessary.

3. Auto-Date and Auto-Time Fields: Documents produced in Image Format shall be imaged to show field codes for auto-date and auto-time fields, to the extent available.

4. Author Comments and Presenter Notes: Documents produced in Image Format shall be imaged to include author comments and presenter notes, to the extent available and unless redactions are allowed under this Order.

5. Date and Time: Documents shall be processed to maintain the date/time shown in the Document as it was last saved or sent by the Custodian or end user, not the date of collection or processing. The preferred time zone for processing ESI is Coordinated Universal Time ("UTC"). To the extent reasonably practical, the Parties will endeavor to produce all ESI processed using UTC time zone.

6. Hidden Data: ESI shall be processed in a manner that maintains all hidden data, if any, such as hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments. ESI produced in Image Format under this Order shall be expanded to display all hidden data in the TIFF. If the Responding Party is unable to expand the ESI to display all hidden data in any TIFF being produced; if doing so would be unreasonably burdensome; or if doing so will result in practically unreadable produced files, the Responding Party may instead provide the Requesting Party with the Native File(s), or else the Parties shall meet and confer regarding an appropriate production format. If the Responding Party is unable to provide the Native File(s), the Parties shall meet and confer to determine a suitable manner of production.

7. Native Files: The Responding Party shall maintain all collected Native Files that may be relevant to this Action in a manner that does not materially alter or modify the file or Metadata other than as provided in this Order.

8. De-NIST'ing: The Parties may de-NIST electronic files, removing known, traceable software applications listed in the National Software Reference Library.[1]

9. Hyperlinks: The Parties recognize that hyperlinked documents present unique challenges that must be investigated and addressed on a Party-by-Party basis before undertaking the production, and privilege logging of ESI. Because of the diverse technical environments and tools available to each Party, the Parties agree to meet and confer regarding a Party's ability to produce hyperlinked documents, where relevant. The Parties shall meet and confer in good faith regarding the feasibility and burdens associated with, *e.g.*, hyperlink collection, hyperlink versioning, and identifying links between hyperlinks and hyperlink targets.

## VI. IDENTIFYING POTENTIALLY RESPONSIVE ESI

### A. Collection and Search Methodology

1. Generally: The Parties will work together, in good faith, to reach an agreement on the Custodians, Date Range, Custodial Data Sources, and Non-Custodial Data Sources ("Collection Parameters") that will be used by a Responding Party to identify potentially responsive Documents. The Parties will also work together, in good faith, to reach an agreement on the Search Strings and Structured Data search parameters ("Traditional Search Methodology") and/or a technology workflow (*e.g.*, predictive coding, technology assisted review ("TAR")) ("TAR Methodology") that will be used by a Responding Party to identify potentially responsive Documents. To the extent a Traditional Search Methodology will be used, the Parties will employ the process in Section VI.B., which may be modified upon agreement of the Parties. To the extent

[1] Available at www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download.

a TAR Methodology will be used, the Parties will employ the process in Section VI.C., which may be modified upon agreement of the Parties.

2. Within 60 days after receipt of the initial discovery requests, the Parties will meet and confer to discuss a list of Custodians and Non-Custodial Data Sources that the Parties believe may hold material responsive to discovery requests.

**B. Traditional Search Methodology**

1. Initial Search Methodology Disclosures: Within 45 days after agreeing to the Collection Parameters, the Responding Party shall disclose to the Requesting Party its proposed Traditional Search Methodology. Specifically, the Responding Party will negotiate a list of Search Strings to run against Custodial Data Sources and provide to the Requesting Party the specific tool or ESI platform that it intends to use and the Non-Custodial Data Sources the Responding Party intends to search, and any other limitations (*e.g.*, date range).

2. Additional Search Methodology Disclosures: To the extent the Requesting Party proposes changes to the Traditional Search Methodology and the Responding Party declines to accept those changes, the Responding Party shall provide to the Requesting Party information sufficient for the Requesting Party to understand the basis or bases on which the Responding Party is declining to agree. While the Responding Party retains discretion over the manner in which it provides this information, the Parties agree to provide hit reports upon request and other information reasonably sufficient to inform the negotiations.

3. Agreed-Upon Search Methodology: Should a dispute regarding Search Methodology be submitted to the Court in accordance with this Order, and notwithstanding the filing of any such motion, the Responding Party will begin its review and production of Documents that are returned by the agreed-upon portions of the Search Methodology.

**C. TAR Methodology**

1. Generally: Instead of relying on a Traditional Search Methodology, the Parties may work together, in good faith, to reach an agreement on a TAR Methodology that will be used by a Responding Party to identify potentially responsive Documents prior to commencing the use of TAR. The Responding Party shall only be obligated to disclose TAR Methodologies used to reduce the corpus of Documents requiring human review for responsiveness.

2. Initial TAR Methodology Disclosure: Within 45 days after agreeing to the Collection Parameters, the Responding Party shall disclose to the Requesting Party its proposed TAR Methodology, including the specific TAR tool that it intends to use. In addition, the Responding Party shall agree to provide the null set metrics validating the TAR Methodology upon conclusion of its review as described in VI.C.5.

3. Additional TAR Methodology Disclosures: To the extent the Requesting Party proposes changes to the TAR Methodology and the Responding Party declines to accept those changes, the Responding Party shall provide to the Requesting Party information reasonably sufficient for the Requesting Party to understand the basis or bases on which the Responding Party is declining to agree.

4. Agreed-Upon TAR Methodology: Should a dispute regarding TAR methodology be submitted to the Court in accordance with this Order, and notwithstanding the filing of any such motion, the Responding Party will begin its review and production of Documents that are returned if there are agreed-upon portions of the TAR Methodology that would permit a Party to move forward without subsequently having to re-do the TAR Methodology upon resolution of the dispute.

5. Null Set Testing: After a sufficient number of Documents returned by the TAR Methodology have been reviewed, the Responding Party will develop and employ a random sampling of Documents not returned by the TAR Methodology (*i.e.*, null set testing) to ensure the efficacy of the as-employed TAR Methodology. The Responding Party will provide to the Requesting Party the methodology and results of its null set testing and will answer reasonable follow up questions the Requesting Party may have about the Responding Party's null set testing. The Requesting Party will also have the right to request changes to the previously agreed TAR Methodology within a reasonable timeframe based on the results of the Responding Party's null set testing. Non-responsive Documents the Responding Party identifies in the null set shall not be produced.

**D. Other Terms**

1. Unsearchable Documents: Documents identified by the Responding Party as potentially relevant for which text-based search technologies are fundamentally ineffective, such as videos, images, hard copy documents, or Documents that contain too little text, must be reviewed or sampled to assess responsiveness. Should a Responding Party believe that reviewing Unsearchable Documents is overly burdensome, the Parties shall meet and confer to determine reasonable and proportionate methods for identifying and reviewing documents not amenable to text search.

2. Meet and Confer: Regardless of whether a Party utilizes a Traditional Search Methodology and/or TAR Methodology, the Requesting Party may propose reasonable changes to the Methodology, which the Responding Party shall consider in good faith.

3. Supplementation: Each Party may, upon reviewing Documents produced in the litigation and conducting other investigations and discovery, and a showing of good cause, request

reasonable changes to the Traditional Search Methodology or TAR Methodology before the applicable substantial completion deadline. The Parties agree to meet and confer in good faith concerning any such requests.

4. No Obligation to Review: Nothing in this Order requires the Responding Party to review Documents prior to their production; provided, however, the Responding Party may not withhold any privileged or protected Document from production that is identified as responsive by the Traditional Search Methodology or TAR Methodology without counsel (or the contract review teams under the direction of counsel) for the Responding Party first reviewing that document and determining that it may be properly withheld from production under the Federal Rules of Civil Procedure.

## VII. PRODUCTION FORMAT

### A. De-Duplication, Email Threading, and Zero-Byte Files

1. De-Duplication: To reduce the unnecessary costs of reviewing and producing exact duplicate Documents, each Party may use reasonable, good-faith efforts to avoid the production of duplicate ESI, subject to the following requirements:

(a) Global de-duplication is to be executed at the Document Family level.

(b) De-duplication shall be done on exact duplicate Documents based on MD5 or SHA-1 hash values.

(c) No party shall identify and/or eliminate duplicates of Hard-Copy Documents or ESI by manual review or any method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

(d) If more than one Custodian possesses a document, the Responding Party shall populate the AllCustodian Metadata field by identifying each

Custodian who had a copy of the produced Document and the file path where the custodian stored the document. Upon a good faith request by the Receiving Party, the Responding party shall also produce file path information for all duplicate copies of a document that were withheld from production on the basis that it is a duplicate of a document that was produced.

2. Email Threading: Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is one that contains all the prior or lesser-included emails and attachments, including each branch of the email thread. The Parties agree that removal of wholly included, prior-in-time, or lesser-included versions from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting. Threading is therefore permitted, though not required.

3. Zero-Byte Files: The Responding Party will take reasonable steps to filter out stand-alone zero-byte files except to the extent these would break Document Families.

**B. ESI and Hard Copy Documents**

1. Metadata: Load Files shall include, where applicable, the Metadata fields identified in **Exhibit 1**. However, and except as otherwise provided herein, the Parties are not required to include Metadata for any Document that did not originally contain such Metadata. If the Responding Party becomes aware that Documents were produced without the required Metadata, the Responding Party shall promptly provide an overlay file containing the required Metadata.

2. Hard Copy Document Production Format: The following terms will apply to the production of Documents originating in hard copy format (*e.g.*, paper):

(a) Hard Copy Documents, unless otherwise specified in this Order, will be produced as black-and-white, single-page, 300 DPI, Group IV* TIFF images, with OCR Text provided in Document-level text files, objective Metadata fields pursuant to **Exhibit 1**, and Load Files pursuant to **Exhibit 2**.

(b) The Responding Party shall take reasonable steps to physically unitize Hard Copy Documents. This provision does not obligate any Responding Party to reassemble Document Families for Hard Copy Documents that are not stored or maintained as Document Families in the location in which members of that family are found or as they are kept in the ordinary course of business. Nor shall this provision obligate any Responding Party to make whole any Document that is not stored or maintained in its complete form.

3. ESI Production Format: The following terms will apply to the production of ESI:

(a) All responsive ESI, except that which is produced in Native Format, shall be produced as black and white, single-page, 300 DPI, Group IV* TIFF files with corresponding extracted full text provided in Document-level text files, Metadata fields pursuant to **Exhibit 1**, and Load Files pursuant to **Exhibit 2**.

(b) For files where such conversion is unduly burdensome or the Document produced is not reasonably unusable, the Parties will meet and confer regarding how the Responding Party may produce the Document in a reasonably usable form to be agreed upon by the respective Parties.

**C. Native Files**

1. Generally: A Responding Party shall produce PowerPoint (and other presentation files), Excel (and other spreadsheet files, including comma or tab delimited files) and video or audio files in Native Format, along with a TIFF placeholder image indicating Bates Number and confidentiality designation.

2. Other Document Types: Other Document types which may be difficult or costly to accurately image may be selected to be produced natively at the Responding Party's discretion. In addition, the Responding Party will honor reasonable requests for Native Files for other types of Documents from Requesting Party.

3. Load File: The production Load Files shall contain a link to the produced Native Format files as specified in the "NativeLink" Metadata field described in **Exhibit 1**,. All other available Metadata required in Exhibit 1 will also be produced for all Native Files.

4. TIFF Slip Sheet: Each electronic file produced in Native Format shall be assigned a unique Bates Number, and the database record for that file shall include a single TIFF image slipsheet stamped with this unique Bates Number, any confidentiality designation, and a standardized phrase indicating that the Document was produced in Native Format (*i.e.*, PRODUCED IN NATIVE FORMAT or similar language).

5. File Name: Any file produced in its Native Format is to be named with its corresponding Bates number and file extension.

**D. Structured Data**

1. Generally: Where a discovery request requires production of Structured Data in lieu of producing structured data systems or applications, the Parties shall meet and confer on the content and format of data from such structured data source. The Responding Party shall identify the Structured Data Sources and take reasonable steps to make all necessary disclosures for the

Requesting Party to understand and evaluate whether the content and format of the data produced would satisfy a production request. Such disclosures shall include but not be limited to relevant data fields or categories of data fields available in the Structured Data, the meaning of the data fields or categories of data fields, as well as codes and abbreviations used in the data source and whether a data dictionary exists, the time period over which data exists, any database schema, or other relevant information. The Parties shall discuss and attempt to agree upon the size (*e.g.,* temporal scope) of the data, the sets of data or fields to be included, and the format in which data extracted shall be produced.

2. Authenticity: Should a Responding Party make a production of Structured Data from a database in an alternate format, such as a delimited file, any delimited file that is produced will be deemed an accurate representation of information included in the counterpart database. Moreover, a Responding Party that withholds any part of a Structured Data source as non-responsive may not later rely on such withheld information unless it produces such information to the other Parties prior to its reliance on such Structured Data.

3. Production of Database Extracts: Any data extracted from databases (including, but not limited to, SQL dumps, database snapshots, and data exports) shall be identified and Bates stamped with a separate Bates range designated by ______-data-0000001 and continuing sequentially. A general description of the database from which the data was extracted shall be provided in a cover letter transmitting the production.

**E. Unique Document Types**

1. Modern Communications: If necessary, the Parties agree to meet and confer to determine the proper methodology for searching and producing information contained in Modern Communications platforms including the contents of any applicable privilege log.

2. Encrypted or Password Protected Documents: The Responding Party shall make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Order, and, to the extent possible, the decrypted Document is produced. Within fourteen days (14) days of a request from the Requesting Party, the Responding Party shall respond to such a request and provide the requested password(s) if such password(s) can be reasonably identified and are necessary to view the encrypted or password-protected Document.

3. Compressed or Container Files: Compression file types (*e.g.*, .CAB, .GZ, .RAR, .ZIP) shall be decompressed to the lowest possible compression resulting in individual folders and/or files. Original compression files and container files need not be produced, provided the responsive content files are produced in accordance with the specifications of this Order.

4. Foreign Language Documents: To the extent that Documents contain languages other than English, in whole or in part, the Responding Party shall produce each such Document in the original language or languages in which it was written when collected. The following terms will also apply to the production of foreign language Documents:

(a) If no English version of a Document is available, the Responding Party has no obligation to produce an English translation of that Document and does not have an obligation to render that Document text searchable via OCR or other means if the foreign language does not use the Latin alphabet.

(b) The Responding Party shall make reasonable efforts to ensure that any technologies and processes used to collect, process, and produce the text of any Document (including all TIFF conversion, OCR processes, and

extraction of text from Native Files) preserves all foreign language text, punctuation, and other characteristics as they exist in the source Native File.

(c) To the extent reasonably and technically possible, foreign language text files shall be delivered in UTF-8 and be Unicode compliant, with the correct encoding to enable the preservation of the Documents' original language.

(d) The Parties will meet and confer concerning procedures for using translations at depositions and at trial.

**F. <u>Redacted Documents</u>**

1. <u>Permissible Redactions</u>: Redactions can be applied for attorney-client privilege, the work product doctrine, or other privileges or protections legally recognized in this jurisdiction, and redactions necessary to protect sensitive personally identifiable information, such as bank account numbers or social security numbers.

2. <u>Impermissible Redactions</u>: A Responding Party may not make redactions to Documents on the sole basis that the content is not responsive.

3. <u>Application of Redactions</u>:

(a) Redactions applied to Documents on the basis of the attorney-client privilege, work product protection, or other privileges legally recognized in this jurisdiction shall be indicated as "REDACTED – PRIVILEGED" and redactions applied to Documents with personal-identifying information shall be indicated as "REDACTED – PII."

(b) Any Document to which a redaction is applied shall have the "REDACTION" Metadata field populated "Y."

(c) If a Document to be produced in Native Format requires redaction, that Document may be produced in redacted Native Format, at the Responding Party's discretion, and to the extent reasonably and technically possible.

(d) If redacting Documents that would otherwise be produced in Native format, the Responding Party may produce either a redacted native document or TIFF images of the document, however, if TIFF images are produced the Producing Party shall produce the TIFFs ensuring that: (1) hidden rows, columns, or sheets are visible in the TIFF; (2) filters are not concealing any information; (3) column widths are sufficient so that numbers do not appear as "######+##" or otherwise distorted; (4) row heights are sufficient so that all content appears; (5) column and row headings print; (6) the tab name appears in the header or footer of the document; (7) comments are produced at the end of the spreadsheet; (8) spreadsheets print across then down; (9) presentation Documents (*e.g.*, PowerPoints) so that all speaker notes and comments are visible; and (10) word processing documents (*e.g.*, Word) so that redlines, track changes, and comments are present. The Parties shall meet and confer if the Requesting Party identifies any legibility issues with this approach.

4. <u>Requests for Re-Production of Redacted Documents</u>: If a Requesting Party receives a redacted TIFF image of a Document that the Requesting Party does not believe is formatted so as to be legible (*e.g.*, column cells display "##########" instead of the value), believes that the TIFF image is not reasonably usable compared to the Native file, or if a Requesting Party wants additional information from an Excel-type spreadsheet (*e.g.*, formulas), the Requesting Party may

make reasonable requests to the Responding Party for legible TIFF image or a redacted native item. At that time, the Requesting Party will explain a reasonable basis for its request and will provide a specific Bates Number range for the ESI at issue. Upon receiving such a request, the Responding Party shall either produce a redacted Native File or disclose to the Requesting Party why it is unreasonable or unnecessary to do so. If the Responding Party is unable to produce a redacted Native File, the Parties shall meet and confer to determine an acceptable production format.

5. Redaction of Other File Types: If the Responding Party encounters Microsoft Access or other Structured Data files or audio or video files or other file types requiring production in Native Format that contain privileged content, the Parties shall meet and confer to determine a suitable manner of producing the non-privileged, responsive content contained in these files.

**G. Document Families**

1. Generally: For ESI, families (*i.e.*, the "parent" Document and each of its "child" Documents) must be preserved by assigning sequential Bates numbers to all files within a parent-child group in accordance with this Order, and by providing accurate attachment ranges for those files in the Metadata fields required. In addition, Metadata must be produced, as set forth in **Exhibit 1**, that maintains the familial relationship.

2. Embedded Documents: Substantive embedded documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records and related back to the respective top-level parent document via the Beginning Attachment Bates Number and Ending Attachment Bates Number, as set forth in **Exhibit 1**. Non-Substantive graphic objects embedded within Documents, such as logos, signature blocks, and backgrounds need not be extracted as separate documents.

3. Responsive Families: If any member of a Document Family is responsive, the Responding Party shall produce all family members and/or portions thereof that are not independently protected as privileged or work-product; provided, however, that where part of a Document Family is withheld, and its relationship to the rest of that Document Family is indicated using slipsheets, the Responding Party shall provide one Bates-numbered slipsheet for each withheld Document.

**H. Technical Issues (Files That Cannot Be Processed)**

1. If a member of a responsive Document Family cannot technically be processed (*e.g.,* unsupported file format, file corruption, inaccessible password-protected document), such technical issues shall be denoted by producing a Bates-labeled slipsheet stating "Technical Issue – File Cannot Be Processed." If available, Metadata for such technically-impaired documents shall be produced. The Parties agree to meet and confer in good faith to resolve any disputes over documents deemed to have technical issues. Blank documents or files, including documents that just include a non-substantive standalone image, such as a signature block, can be excluded from production.

**I. Other Terms**

1. Originating Source: The Custodian or originating source shall be identified in the Custodian field and All Custodian field of the database Load Files, as provided in Exhibit 1. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) shall be produced in such a fashion as to identify the natural person. A Responding Party shall use a uniform description of a particular Custodian across all of its productions.

2. Appearance, Content and Reasonably Usable: If a Party identifies imaging or formatting problems in a produced Document or Documents or if the form of production results in

a document that is not reasonably usable, the Parties shall meet and confer in an attempt to resolve any outstanding problems.

3. Color and Low-Resolution Images: If a Requesting Party finds the black and white version of a Document produced in non-Native Format insufficient, the Requesting Party may request by specific Bates number that the Responding Party provide a color and/or higher resolution image, as appropriate. The Responding Party will not unreasonably deny such a request and may choose to respond by providing the Native Format version of the Document or any other format consistent with this Order's specifications. If a Responding Party converts a document to color image in response to a request from a Requesting Party, the Responding Party shall do so in JPEG, TIFF, or such other format as agreed with the Requesting Party.

4. Bates Numbering: Each page of a Document produced in the litigation in TIFF file format shall have a legible numeric identifier ("Bates Number") electronically stamped onto the image that must reasonably identify the Responding Party. Bates Numbers must meet each of the following criteria:

(a) Be unique across the entire Document production;

(b) Maintain a constant length of nine numeric digits (including 0-padding) across the entire production;

(c) Contain only alphanumeric characters, no special characters, or embedded spaces;

(d) Be sequential within a given Document;

(e) Not be obscured by other content on the Document, to the extent practicable; and

(f) Be consistently applied (*i.e.*, same font type, size, and location) on Documents.

5. Confidentiality Stamp: Consistent with the terms of the Protective Order entered in this Action, the Responding Party shall electronically stamp the appropriate confidentiality designations on each page of Documents that the Responding Party reasonably believes are confidential or highly confidential. In applying this stamp, the Responding Party will make reasonable efforts to avoid obscuring any information originally appearing on the Document. In addition, the corresponding confidentiality designation shall be provided in the Metadata field "Confidential". For ESI produced in Native Format, the slip sheet produced with the Native File shall include the corresponding confidentiality designation.

6. Text File: Each Document produced under this Order, that in its native form contains extractable text, shall be accompanied by a single, UTF-8 formatted multipage text file containing all of the text for that Document (as opposed to one text file per page of such Document). Each text file shall be named using the Bates Number of the first page of the corresponding production item. For ESI (except redacted Documents), the text file will be taken from the ESI itself, and for Hard Copy Documents and redacted ESI, the text file will be created through OCR. Text files shall be provided in a "Text" folder.

**J. Production Media**

1. Generally: Documents shall be produced on external hard drive (with standard PC compatible interface), via secure FTP (SFTP) site, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media").[2]

---

[2] Productions made via secure FTP or other electronic transfer are not required to be supplemented with hard media containing the same Documents.

2. Label and Cover Letter: Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

(a) Name of the litigation and its case number;

(b) Name of the Responding Party;

(c) Date of the production (mm/dd/yyyy);

(d) Bates number range;

(e) Confidentiality Designation; and

(f) Notes regarding any irregularities in the production (*e.g.*, whether it is replacement Production Media).

3. Overlay Productions: Any replacement Production Media or Documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced.

4. Encryption: All Production Media must be encrypted, with the Responding Party providing a decryption key at the time of production.

## VIII. ASSERTIONS OF PRIVILEGE

1. Generally: The Parties may review Documents for attorney client privilege, work product protected information, or other privilege recognized in this jurisdiction prior to production, provided that, to the extent a Party withholds information otherwise discoverable on the basis that it is privileged or protected from disclosure, that Party must comply with its obligations under Federal Rule of Civil Procedure 26(b)(5)(A).

2. Applicable Law: Assertions of privilege or protection will be evaluated under U.S. federal law.

3. Privilege Logs, Generally: A Responding Party must, consistent with Federal Rule of Civil Procedure 26(b)(5)(A), provide the Requesting Party a privilege log as set forth below.

4. Categories of Documents that Do Not Need to Be Logged: The following categories of Documents do not need to be contained on a Responding Party's privilege logs, unless good cause exists to require the Responding Party do so:

(a) Any communications generated on or after November 15, 2024, the date that the first Complaint in this Action was filed, between a Responding Party and its outside counsel, an agent of its outside counsel, or any testifying or non-testifying expert;

(b) Any communications between Party counsel and their agents or testifying or non-testifying experts;

(c) Any privileged materials or work product created on or after November 15, 2024, by or specifically at the direction of a Party's outside counsel, an agent of outside counsel, any non-testifying or testifying experts.

(d) Redacted documents as long as: (a) for emails, the objective metadata (*i.e.*, to, from, cc, bcc, recipients, date, and time, unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction (*i.e.*, that it is privileged), is noted or otherwise ascertainable on the face of the document (for redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the document that is sufficient to understand the subject matter of the document may be requested); and (b) for non-email documents, the reason for the

redaction is noted or otherwise ascertainable on the face of the document in the redacted area.

3. Privilege Log Format: All privilege logs must be provided by the Responding Party to the Requesting Party in native Excel format.

6. Privilege Log Timing: Unless otherwise agreed by the Parties, a Producing Party's first Privilege Log will be produced (a) thirty (30) days before the substantial completion of that Producing Party's document production and its second log will be produced (b) sixty (60) days after the substantial completion of that Producing Party's document production. If additional privilege logs are necessary, the Parties will meet and confer to discuss the appropriate timing for the production of any supplemental logs to allow sufficient time for review before close of fact discovery.

7. Privilege Log Additional Fields: The privilege logs produced in this action must contain, on a Document-by-Document basis, the following fields:

(a) Unique privilege log reference number, and if produced in redacted form, Beginning Bates number;

(b) Each privilege that the Responding Party asserts provides the basis for its withholding of the Document;

(c) A unique symbol in the relevant fields next to the lawyer(s) involved in the communication or, for documents where a lawyer does not appear in any of the metadata fields set forth below, a separate column identifying the lawyer that the withholding party asserts created the privilege;

(d) An indication of whether the document has been redacted and produced or wholly withheld; and

(e) Description of the document (or redacted portion of the document) and its subject matter sufficient to establish the privilege or protection as set forth in Federal Rule of Civil Procedure 26(b)(5)(A)(ii).

8. Privilege Log Fields: In addition, the privilege logs produced in this action must contain, on a Document-by-Document basis, the information below to the extent available. Metadata may be used to supply this information:

(a) BegBates;

(b) BegAttach;

(c) EndAttach;

(d) MessageID/ThreadID/ConversationIndex

(e) Redacted;

(f) Custodian;

(g) AllCustodians;

(h) Application;

(i) FileType;

(j) FileExtension;

(k) HashValue;

(l) File Name;

(m) Date;

(n) Author/Sender;

(o) From;

(p) To;

(q) CC; and

(r) BCC

(s) Subject

9. Email Threads: For email threads, the Responding Party shall log an entry for each lesser-included withheld email in the thread. For emails requiring redactions due to partially privileged or protected content, the Responding Party will produce a single redacted version of each thread requiring redaction. The Responding Party shall not be obligated to produce redacted, lesser-included emails contained within the redacted thread, nor to produce redacted copies of more inclusive emails that are properly withheld as fully privileged.

10. Logging of Document Families: Where one or more members of a document "family" (*e.g.*, an email and its attachment, multiple email attachments, *etc.*) are withheld on the grounds of privilege, each document must be logged separately but grouped together on the privilege log in such a way that it is clear that the documents are related. For document families in which fewer than all of the documents are withheld as privileged or protected, the privilege log entry for the withheld document(s) shall identify the Bates number(s) of the produced family member(s).

11. Requests for Additional Information: To the extent a Requesting Party believes it needs, in good faith, additional information to assess a Responding Party's assertion of privilege, it may request additional information from the Responding Party.

## IX. WAIVER OR NON-WAIVER OF PRIVILEGE

1. Generally: Except as otherwise provided herein, the production of privileged or work-product protected documents, ESI, or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state

proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

2. Intentional Waiver: Nothing in this Order prevents a Party from intentionally waiving any claims of privilege.

3. Reservation of Rights: A Party is not precluded by this Order from arguing that a privilege has been waived for reasons other than the disclosure of a Document.

4. Notice by Requesting Party: If a Requesting Party identifies Documents that appear on their face to be Privileged Material belonging to a Responding Party, the Requesting Party is under a good-faith obligation to promptly notify the Responding Party. Such notification shall not waive the Requesting Party's ability to subsequently contest any assertion of privilege or protection with respect to the potentially Privileged Material. If the Responding Party to which the disclosed Privileged Material belongs wishes to assert a claim of privilege, that Responding Party shall notify the Requesting Party of its assertion of privilege within five (5) business days of receiving the Requesting Party's notification of potentially Privileged Material and provide sufficient information to the Requesting Party regarding the asserted privilege(s), for example, in the form of privilege log entry or entries, to assess the clawback.

5. Notice by Responding Party: A Responding Party that determines that it made a disclosure of Privileged Material in this Action shall promptly notify all counsel of record following discovery of the production and confirmation that the produced Documents contain Privileged Material. Concurrent with that notification, or within ten (10) business days after notification, the Responding Party shall provide sufficient information to the Requesting Party regarding the asserted privilege(s), for example, in the form of privilege log entry or entries, to assess the clawback. The notice shall identify the potentially Privileged Material that was produced

and the date(s) the potentially Privileged Material was produced. If the Responding Party claims that only a portion of a Document contains Privileged Material, the Responding Party shall also provide a new copy or copies of the Document(s) with the allegedly Privileged Material redacted concurrent with the notification, or within ten (10) business days after notification.

6. Steps After Clawback is Made: Upon receiving notice from the Responding Party or upon determining that a Document it received from a Responding Party appears on its face to contain Privileged Material, the Requesting Party shall return, sequester, or destroy the disclosed Document or information forthwith, as well as any and all copies thereof, and destroy or sequester any references to the erroneously or inadvertently disclosed Document or its contents, to the extent such references exist in other materials prepared by the Requesting Party and certify the same to the Responding Party. In addition, if any Document claimed to contain Privileged Material has been provided to a non-party by a Requesting Party, the Requesting Party will use reasonable efforts to secure the return of the Document claimed to contain Privileged Material (and the destruction of any references thereto); provided, however, any such Document or information that may exist on a computer or back-up media which cannot be reasonably deleted may be retained until such time as the media is subject to routine deletion or destruction, provided that no person attempts to access the contents of the Privileged Material unless allowed under the terms of this Order or another order of the Court.

7. Motion Practice: If a Requesting Party disputes a Responding Party's privilege claim, the Requesting Party shall notify the Responding Party of the dispute and the basis thereof in writing. The Responding Party shall have ten (10) business days to respond. The Parties shall thereafter meet and confer in good faith, within five (5) business days, regarding the disputed claim. In the event that the Parties do not resolve their dispute, the Requesting Party may bring the

dispute to the Court. The Requesting Party shall have the right to submit to the Court for *in camera* review a copy of the Document(s) containing the alleged Privileged Material. If the Court sustains the claim that the Document(s) disclosed, exchanged, produced, or discussed is Privileged Material, the Requesting Party must, within ten (10) business days of the Court's order, comply with the provisions of this Order, and the Requesting Party shall advise the Responding Party in writing of the return and/or destruction of the Document(s) at issue; provided, however, that the Requesting Party may request, and the Responding Party shall not unreasonably refuse, an additional amount of time to complete this process.

## X. OTHER

1. Non-Parties: A Party ("Issuing Party") that issues a subpoena to a non-Party must include a copy of this Order with the subpoena and state that the applicable Parties to the Action have requested that the Non-Party produce Documents in accordance with the specifications set forth herein. The Issuing Party shall produce any Documents obtained pursuant to the Non-Party subpoena to the other Parties in the Action within twenty-one (21) business days of initial receipt. To the extent that a Non-Party produces files in Native Format, the Issuing Party shall reproduce those files to the other Parties in their native format unless otherwise agreed. For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Non-Parties to object to a subpoena.

2. Later-Added Parties: Any Party added or joined to this litigation after the date of this Order that seeks to deviate from this Order must obtain leave of Court to do so unless every other Party consents to the proposed deviation in writing. Before seeking Court intervention, the Parties shall meet and confer in good faith regarding any modification.

3. Compliance with Order Impossible or Impractical: In light of the disparate data systems and architectures potentially employed by the Parties, variations from this Order may be required. In the event that any Party identifies a circumstance where application of this Order is technologically impossible or would be unduly burdensome or impractical, that Party shall notify the other Parties of the issue exception and thereafter meet and confer in a good-faith effort to reach agreement on potential alternative approaches. If the Parties agree to the exception and alternative procedure, no amendment of this Order is necessary.

4. Adjustment of Timing: The Parties may stipulate without the need for Court approval to narrow or extend the time periods specified in this Order.

5. Reservation of Rights: Nothing in this Order waives the right of any Party to petition the Court for an Order modifying the terms of this Order upon sufficient demonstration that compliance with such terms is either (1) unexpectedly or unreasonably burdensome, or (2) impossible; provided, however, the Parties must first meet and confer in an effort, if possible, to reach an agreement on an exception from or modification to this Order prior to seeking relief from the Court.

6. Continuing Obligations: The Parties will continue to meet and confer as necessary and appropriate, including regarding dates and time frames set forth in this Order. This Order does not address or resolve any other objection to the scope of the Parties' respective discovery requests.

7. Costs: Each Party is to bear its own discovery costs unless otherwise ordered by the Court or agreed among the Parties.

**SO ORDERED:**

Dated: October 23, 2026

Hon. Gabriel A. Fuentes
United States Magistrate Judge

**EXHIBIT 1: PRODUCTION SPECIFICATIONS**

The following Metadata fields will be produced, to the extent reasonably and technically available[3]:

| Field | Description | Hard Copy Documents | ESI |
|---|---|---|---|
| AllCustodians | This field shall reference the Name(s) of all Custodian(s) who were in possession of a de-duplicated Document. | -- | X |
| **AllPaths** | **UPON GOOD FAITH REQUEST:** This field shall reference the File Path of the location where each Custodian in possession of a de-duplicated Document stored the document. | -- | X |
| AttachCount | Populated for parent records and indicates the number of attachments that constitute the whole family (BegAttach to EndAttach). | -- | X |
| AttachFileName | For attachments only, the eDoc File Name, as read from the processing system. | -- | X |
| Author | Author field extracted from the Metadata of a non-Email. | -- | X |
| BCC | BCC or Blind Carbon Copy field extracted from an Email. | -- | X |
| BegAttach | Beginning Bates Number of the first Document in a Document Family range. Documents that are part of Document families (*i.e.*, containing parents and attachments), should receive a value. | -- | X |
| BegBates | Beginning Bates Number. | X | X |
| CC | CC or Carbon Copy field extracted from an Email. | -- | X |
| Confidential | Confidentiality designation if a Document has been so designated under | X | X |

[3] Different ESI platforms assign different names to specific Metadata, therefore, the field names provided in Exhibit 1 may not reflect the field name for the metadata in Responding Party's ESI Platform. The Metadata fields produced shall be governed by the information contained in the Description column of Exhibit 1.

| | | | |
|---|---|---|---|
| | the Protective Order in this Action; otherwise, blank. | | |
| Custodian | Name of the Custodian of the Document Produced. | X | X |
| Date/Time Created | Creation date of a file (mm/dd/yyyy HH:MM:SS format). | -- | X |
| Date/Time Modified | Last modification date (mm/dd/yyyy HH:MM:SS format). | -- | X |
| Date/Time Received | Received date of an Email (mm/dd/yyyy HH:MM:SS format). | -- | X |
| Date/Time Sent | Sent date of an Email (mm/dd/yyyy HH:MM:SS format). | -- | X |
| EndAttach | Beginning or Ending Bates number of the last Document in attachment range in a Document Family range. Documents that are part of Document Families (*i.e.*, containing parents or attachments) should receive a value. | -- | X |
| EndBates | Ending Bates Number. | X | X |
| CalendarEndDate | End date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS. | -- | X |
| FileExtension | File extension of Document (.msg, .doc, .xls, etc.). | -- | X |
| FileName | Filename of the original source ESI. | -- | X |
| FilePath | The full path to the file in its original location or the email folder containing the item for the custodian of the document produced. | -- | X |
| FileSize (in bytes) | Size of the file in bytes. | X | X |
| From | From or Sender field extracted from an Email | -- | X |
| FullText | File path to full text/OCR File. | X | X |
| HASHValue | MD5 or SHA Hash value of the file. | -- | X |
| Importance | Email importance flag. | -- | X |
| MessageStatus | Status of messages/calls (*i.e.*, Read, Unread, Completed Call, Missed Call, etc.) | -- | X |

| | | | |
|---|---|---|---|
| MessageID or ThreadID or<br><br>ConversationIndex | Unique identification number that indicates the email thread in which an email appears. For instance, the Outlook Message ID assigned by the Outlook mail server, if applicable. | -- | X |
| NativeLink | Path and filename to produced Native Format file. | -- | X |
| PageCount | The number of pages in the file. | X | X |
| ProductionVolume | Production volume name or number. | X | X |
| Redacted | User-generated field that is populated "Y" where the Document is redacted. Otherwise, blank. | X | X |
| RedactionBasis | User-generated field that is populated with the privilege reason where a Document has been redacted for privilege. | X | X |
| SentDate | The sent date of the message in the format MM/DD/YYYY HH:MM:SS. | -- | X |
| SourceParty | The Responding Party. | X | X |
| CalendarStartDate | Start date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS. | -- | X |
| Subject | Subject of message or subject of calendar entry. | -- | X |
| Title | Title field extracted from the Metadata of a non-Email. | -- | X |
| To | To or Recipient field extracted from an Email or message level Document | -- | X |
| TrackChanges | (Y/N) Field for documents with track changes | -- | X |

**EXHIBIT 2: LOAD FILE FORMAT FOR ESI**

1. Delimited Text File: A delimited text file (.DAT File) containing the fields listed in **Exhibit 1** should be provided. The delimiters for the file should be Concordance defaults:

   (a) Comma (Field Delimiter) - ASCII character 20 (¶ (DC4))

   (b) Quote (Text Qualifier) - ASCII character 254 (þ)

   (c) Newline (Return) - ASCII character 174 (®)

   (d) Multi-Value Separator - ASCII character 059 (;)

2. Image Cross-Reference File (.opt): The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

   (a) ImageID: The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document.

   (b) VolumeLabel: The name of the volume.

   (c) ImageFilePath: The full path to the image file.

   (d) DocumentBreak: If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document.

   (e) FolderBreak: Leave empty.

   (f) BoxBreak: Leave empty.

   (g) PageCount: Number of pages in the Document.

3. Sample Data:

   (a) PROD00000001, VOL001,E:\100\ PROD00000001.TIF,Y,,,2

(b) PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,,

(c) PROD00000003, VOL001,E:\100\ MT00000003.TIF,Y,,,4

(d) PROD00000004, VOL001,E:\100\ MT00000004.TIF,,,,

(e) PROD00000005, VOL001,E:\100\MT00000005.TIF,,,,

(f) PROD00000006, VOL001,E:\100\MT00000006.TIF,,,,